No. 23-2567

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**UNITED STATES OF AMERICA,**
  **Plaintiff-Appellee,**

  **v.**

**ECHO A. SCHEIDT**
  **Defendant-Appellant**


Appeal from the United States District Court
for the Northern District of Indiana
Case No.  1:22-CR-49
The Honorable Chief Judge Holly Brady


## BRIEF AND REQUIRED SHORT APPENDIX
## OF DEFENDANT-APPELLANT ECHO A. SCHEIDT

Northern District of Indiana
Federal Community Defenders, Inc.
Chad J. Pennington
Attorney for Defendant-Appellant
Echo A. Scheidt

200 E. Main Street, Suite 905
Fort Wayne, IN 46802
Telephone: (260) 422-9940
Fax: (260) 422-9954
Email: Chad_Pennington@fd.org

---

**Oral Argument Requested**

---

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __23-2567__

Short Caption: __United States v. Echo A. Scheidt__

  To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

  The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Echo A. Scheidt

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Chad J. Pennington, Federal Community Defenders, Inc. 200 E. Main Street, Suite 905, Fort Wayne, IN  46802

    Michelle F. Kraus, Federal Community Defenders, Inc. 200 E. Main Street, Suite 905, Fort Wayne, IN  46802

(3)    If the party, amicus or intervener is a corporation:

    i)    Identify all its parent corporations, if any; and

       N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

       N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: __s/ Chad J. Pennington__     Date: __August 10, 2023__

Attorney's Printed Name: __Chad J. Pennington__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: __200 E. Main Street, Suite 905, Fort Wayne, IN  46802__

Phone Number: __(260) 422-9940__     Fax Number: __(260) 422-9954__

E-Mail Address: __chad_pennington@fd.org__

rev. 12/19 AK

i

# TABLE OF CONTENTS

**PAGE**

Appearance & Circuit Rule 26.1 Disclosure Statement .................................................. i

Table of Contents ......................................................................................................... ii

Table of Authorities .................................................................................................... iii

I. Introduction ............................................................................................................ 1

II. Jurisdictional Statement ........................................................................................ 5

III. Issue Presented .................................................................................................... 7

IV. Statement of the Case .......................................................................................... 7

V. Argument Summary ............................................................................................... 9

VI. Standard of Review ............................................................................................ 16

VII. Argument .......................................................................................................... 17

    A. *Holden* does not preclude Ms. Scheidt's Second Amendment
       challenge here. ........................................................................................... 17

    B. The District Court erred in concluding that § 922(a)(6) and Ms.
       Scheidt's prosecution were not subject to the Second Amendment's
       plain text. .................................................................................................... 24

VIII. Conclusion ....................................................................................................... 31

IX. Statement Concerning Oral Argument .............................................................. 32

Certificate of Compliance with F.R.A.P. Rule 32(a)(7)(C) ........................................ 34

Certificate of Service .................................................................................................. 35

# TABLE OF AUTHORITIES

**CASES**   **PAGE**

*Abramski v. United States*, 573 U.S. 169, 178-179 (2014)...............................24

*Atkinson v. Garland*, 70 F.4th 1017-1018, 1020, 1023-24 (7th Cir. 2023) ........... 9, 14, 22

*Class v. United States*, 583 U.S. 798, 806 (2018) ......................................... 17

*Dennis v. United States*, 384 U.S. 855, 866–67 (1966) ................................... 23

*District of Columbia v. Heller*, 554 U.S. 570, 581, 594, 626 (2008) ................. 9, 13, 20

*Huddleston v. United States*, 415 U.S. 814, 816, 819, 822, 823 (1974) ................. *Passim*

*L.D.R. by Wagner v. Berryhill*, 920 F.3d 1145, 1153 (7th Cir. 2011) ............................ 16

*McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010)............................... 27

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2126-2127, 2129-2131, 2156 (2022) ..........................................................................................*Passim*

*Range v. Attorney General*, 69 F.4th 96, 100, 103 (3d Cir. 2023).......................*Passim*

*United States v. Bass*, 325 F.3d 847, 849 (7th Cir. 2003).............................. 16

*United States v. Bullock*, --- F. Supp. 3d ---, 2023 WL 4232309, at * 19-20 (S.D. Miss. June 28, 2023) .................................................................................... 30

*United States v. Forbis*, --- F. Supp. 3d ---, 2023 WL 5971142, *3 (N.D. Okla. Aug. 17, 2023)................................................................................................ 30

*United States v. Griffin*, Case No. 21-cr-00693, 2023 WL 8281563, *4 (N.D. Ill. Nov. 30, 2023).................................................................................................. 30

*United States v. Harper*, No. 1:21-CR-0236, 2023 WL 5672311, at *6 (E.D. Pa. Sept. 1, 2023)................................................................................................ 30

*United States v. Holden*, 70 F.4th 1015, 1017, 1018 (7th Cir. 2023) .......................*Passim*

*United States v. Kapp*, 302 U.S. 214, 218 (1937) ..................................... 22, 23

*United States v. Knox*, 396 U.S. 77, 79 (1969) .......................................... 23

*United States v. Leach*, 639 F.3d 769, 772 (7th Cir. 2011) ............................. 16

*United States v. Meza-Rodriguez*, 798 F.3d 664, 668 (7th Cir. 2015) ........................ 16

*United States v. Miles*, 86 F.4th 734, 740 (7th Cir. 2023) ............................ 16

*United States v. Prince*, No. 22 CR 240, 2023 WL 7220127, * 4-5 (N.D. Ill. Nov. 2, 2023) ................................................................................................ 30

*United States v. Quailes*, --- F. Supp. 3d ---, 2023 WL 5401733, *8 (E.D. Pa. Oct. 21, 2023)................................................................................................ 30

*United States v. Queen*, 408 F.3d 337, 339 (7th Cir. 2005) ........................... 19

**STATUTES**

18 U.S.C. § 922(a)(1)) ....................................................................... 25

18 U.S.C. § 922(a)(6) ....................................................................*Passim*

18 U.S.C. § 922(b)(5) ....................................................................... 25

18 U.S.C. § 922(d) .................................................................... 26, 28

18 U.S.C. § 922(g) ......................................................................*Passim*

18 U.S.C. § 922(g)(1) ................................................................. 29, 30

18 U.S.C. § 922(n) .......................................................................... 18

18 U.S.C. § 922(t) .......................................................................... 26

18 U.S.C. § 923(a) .......................................................................... 25

18 U.S.C. § 923(g)(1) ............................................................................ 26
18 U.S.C. § 924(a)(1)(A) ....................................................................... 24
18 U.S.C. § 924(a)(2) .......................................................................... 1, 7
18 U.S.C. § 1001 .................................................................................... 2
18 U.S.C. § 1001(a) ................................................................................ 7
18 U.S.C. § 3231 .................................................................................... 5
18 U.S.C. § 3742 .................................................................................... 6
28 U.S.C. § 1291 .................................................................................... 6
28 U.S.C. § 2106 .................................................................................... 6

## OTHER AUTHORITIES

C.F.R. § 478.11 ..................................................................................... 13
Federal Rule of Appellate Procedure 4(b)(1)(A)(i) ................................. 6
Federal Rule of Appellate Procedure 34(a) ........................................... 32
Federal Rule of Criminal Procedure 11 ........................................... 16, 17
Federal Rule of Criminal Procedure 12(b) .............................................. 8
Seventh Circuit Court of Appeals Rule 34(f) ......................................... 32
U.S. Const. amend. II .................................................................... *Passim*

# I.    INTRODUCTION

18 U.S.C. § 922(a)(6) prohibits:

[A]ny person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

The referenced chapter is Chapter 44 of the federal criminal code.

Distilled, § 922(a)(6), may be divided into four constitutive parts. When a person 1) acquires or attempts to acquire a firearm from a licensed firearms purveyor; 2) the person is prohibited from providing false information to the purveyor; 3) regarding any fact; 4) material under Chapter 44 to the firearm's transfer (any sale or disposition) from the purveyor to the person. When a person provides false information under § 922(a)(6), they are subject to criminal punishment under 18 U.S.C. § 924(a)(2) of up to ten years custody.

What § 922(a)(6) is not, is a general federal perjury statute. The statute does not regulate all dishonest representations a person may provide to the federal government. Congress has promulgated a

criminal statute accomplishing that broader regulatory aim, 18 U.S.C. § 1001. Section 922(a)(6), rather, is tailored. It applies only to representations made when a person has acquired or attempted to a acquire a firearm from a licensed federal firearm purveyor. That distinction, between general perjury and § 922(a)(6), is relevant here.

The question presented in this direct appeal is whether § 922(a)(6)'s application to Ms. Echo Scheidt's prosecution is subject to Second Amendment scrutiny and analysis under the *Bruen* framework. The District Court erred in concluding the statute is not subject to Second Amendment scrutiny and falls outside of the Amendment's plain text. The District Court based its ruling, in part, on its determination that § 922(a)(6) does not implicate a protected Second Amendment interest because the statute exclusively regulates purported acts of dishonesty. The District Court, thus, found that § 922(a)(6) functions as a general perjury-like statute.

To be sure, the District Court was correct, the statute and the framework it is part of, regulates alleged acts of dishonesty in the acquisition or attempted acquisition of a firearm. However, the statute and the regulatory scheme it is part of does not function exclusively as a

perjury-like regulation. The statute, rather, is *also* a restriction on firearm possession. Indeed, the first portion of the statutory language states that the regulation applies to the acquisition or attempted acquisition of a firearm, i.e., firearm possession.

In practice, and as-applied in Ms. Scheidt's case, § 922(a)(6) is part of Congress's requirement that before a person may acquire a firearm from a firearm purveyor, they must provide information Congress has designated material in Chapter 44 of the federal criminal code. Conceptually, Congress's regulatory scheme imposes an initial requirement on a firearm purchaser or transferee that they must provide the requested information before they may possess a firearm.

Consider a hypothetical. A potential firearm buyer enters a firearm retailer's storefront. Before the person may purchase the firearm from the retailer, they are subject to answer questions on a required questionnaire. The questionnaire, ATF Form 4473, asks the potential buyer to provide information regarding their status, such as whether they have been convicted of a felony offense, their conduct, such as whether they are a controlled substance user or addict, and to provide background information, such as their current residential

address. If the person provides the wrong answer on Form 4473, such as "yes" they have been convicted of a felony offense or "yes" they are a controlled substance user, they may not possess the sought firearm, and the firearms retailer (the licensed purveyor) may not transfer the firearm to the person.

It is this *ex-ante* questionnaire and required information demand in Form 4473 that brings § 922(a)(6) within the Second Amendment's textual scope. The statute's application in this case constituted a Second Amendment restriction in the first instance, before Ms. Scheidt completed the Form, because the statute conditioned her firearm possession on completing the questionnaire.

Applying the above hypothetical, to obtain the firearms at issue in this case, Ms. Scheidt had to answer a series of questions. If she answered in a particular way, she could not obtain the firearms at issue. It is Congress's directive that a firearms purveyor ask for designated information from the firearm purchaser or transferee, and that person must provide certain affirmative responses *before* the firearm may be transferred, and thus, possessed, is what renders § 922(a)(6) amenable to a Second Amendment challenge. In this case, it is

those questions on Form 4473 that are the firearm restriction, i.e., the infringement, on the constitutionally protected act of firearm possession. By conditioning firearm possession on the completion of a Form and the submission of required answers ranging from background information, status, and conduct, Congress has created a statute that imposes a restriction on firearm possession. Again, before Ms. Scheidt answered the questions on Form 4473, she was required to complete the Form.

What this direct appeal is not requesting is review of whether § 922(a)(6) satisfies both prongs of the *Bruen* framework. The District Court here concluded that Ms. Scheidt is not entitled to Second Amendment protection at *Bruen's* first prong and declined to consider *Bruen's* second prong, whether the regulation is consistent with the historical tradition of firearm regulation from the time of the Founding, 1791. Mr. Scheidt seeks reversal on *Bruen's* first prong, and remand for consideration of *Bruen's* second prong.

## II.   JURISDICTIONAL STATEMENT

The District Court exercised subject matter jurisdiction over Ms. Scheidt's criminal case pursuant to 18 U.S.C. § 3231. This Court

exercises appellate jurisdiction over Mr. Scheidt's direct appeal under 28 U.S.C. §§ 1291, 2106, and 18 U.S.C. § 3742.

On February 10, 2023, Ms. Scheidt moved to dismiss counts 1-5 of the indictment, R. 21, and on April 10, 2023, the District Court denied her motion. R. 31; *see also* App. pp. 42-46 (order on direct appeal). On May 16, 2023, the District Court accepted Ms. Scheidt's guilty plea on all six counts the government had raised in the indictment. R. 1, 41. On August 3, 2023, the District Court entered judgment, imposing an 18-month custodial sentence, with a period of supervised release to follow of 30 months. R. 60. On October 19, 2023, the District Court entered an amended judgment clarifying that Ms. Scheidt will serve 6 months of her 18-month custodial term on home confinement. R. 76; App. pp. 8-15. The District Court's amended judgment did not change the 30-month supervision period.

On August 9, 2023, Ms. Scheidt filed a timely notice of appeal pursuant to Federal Rule of Appellate Procedure 4(b)(1)(A)(i). R. 63. On August 10, 2023, this Court docketed Ms. Scheidt's criminal case, and set September 19, 2023, as her opening Appellant brief deadline. DE 1. On September 11, 2023, Ms. Scheidt moved for a time enlargement to

file her opening brief, DE 5, which this Court granted, setting October 19, 2023, as the Appellant opening brief deadline. DE 6. On September 28, 2023, and November 14, 2023, this Court further extended Ms. Scheidt's opening brief deadline. DE 8, 10. Ms. Scheidt now timely submits her opening Appellant brief challenging the District Court's denial of her motion to dismiss counts 1-5 of the indictment.[1]

## III.   ISSUE PRESENTED

Whether the Second Amendment's plain text covers § 922(a)(6)'s regulated conduct at *Bruen's* first prong? The District Court erred in concluding that § 922(a)(6) is not covered by the Second Amendment's plain text.

## IV.   STATEMENT OF THE CASE

On August 24, 2022, the government filed a six-count indictment, charging Ms. Scheidt under §§ 922(a)(6) and 924(a)(2) in counts 1-5, and § 1001(a) in count six. R. 1; *see also* App. pp. 2-7.  In the indictment, the government alleged that Ms. Scheidt, on five occasions in 2022, entered

---

[1] "R." refers to the District Court docket entries. "DE" refers to the docket entries before this Court. "App." refers to the short appendix attached in support of this brief.

a firearm retailer in the Northern District of Indiana and provided a false residential address and falsely stated she was not a marijuana user when she completed Form 4473. *See* R. 1, pp. 1-5; App. pp. 2-6. On February 10, 2023, Ms. Scheidt moved to dismiss counts 1-5 under the Second Amendment and Federal Rule of Criminal Procedure 12(b). R. 21; App. pp. 16-38. In moving to dismiss, Ms. Scheidt raised both a facial and as-applied constitutional challenge to § 922(a)(6). *See* R. 21, p. 1; App. p. 16.

On April 10, 2023, the District Court denied Ms. Scheidt's dismissal motion. R. 31; App. pp. 42-46. The District Court concluded that "the conduct prohibited by § 922(a)(6) is not covered by the plain text of the Second Amendment, [therefore,] there is no need to conduct a full *Bruen* analysis." R. 31, p. 1; App. p. 42.

On May 1, 2023, Ms. Scheidt plead guilty to all six counts. R. 38. On May 16, 2023, the District Court accepted Ms. Scheidt's guilty pleas. R. 41. Ms. Scheidt plead guilty without a plea agreement or appellate waiver provision.

On August 3, 2023, the District Court imposed an 18-month custodial sentence, with a period of 30 months of supervised release to

follow. R. 60. The District Court's custodial sentence was at the top of

the adjusted advisory guidelines range of 12-18 months based on her

final adjusted guidelines offense level of 13, and criminal history

category of I (zero criminal history points). *See* Presentence

Investigation Report ¶¶ 48, 53, 84. The District Court ordered the 18-

month sentences on all six counts, and to run concurrently. *See* R. 76;

App. pp. 8-15. Ms. Scheidt now submits this direct appeal, challenging

the District Court's denial of her motion to dismiss – that § 922(a)(6)'s

regulation of firearm conduct is not subject to Second Amendment

analysis.

## V.    ARGUMENT SUMMARY

The Second Amendment of the United States Constitution reads:

"A well regulated Militia, being necessary to the security of a free State,

the right of the people to keep and bear Arms, shall not be infringed."

Like all constitutional rights, the Second Amendment right to keep and

bear arms, however, is not unlimited. *See Atkinson v. Garland*, 70 F.4th

1018, 1020 (7th Cir. 2023) (citing *District of Columbia v. Heller*, 554

U.S. 570, 626 (2008)). Applying *Bruen*, the limitation on the

government's authority to regulate firearm possession is grounded in

"text and history . . . ." *Id.* (citing *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2131 (2022)). "Accordingly, when the Second Amendment's 'plain text' covers the regulated conduct, the government has only one way to defend the regulation—by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'" *Id.* (quoting *Bruen*, 142 S. Ct. at 2126).

The District Court's error was in how it framed the conduct at issue. Ms. Scheidt's conduct may have included her proffering of dishonest information, and her punishment may relate, in part, to the alleged acts of dishonesty, that is undisputed. However, her prosecution was brought within the Second Amendment's plain text because Congress here has conditioned her right to possess a firearm on her completion of the questionnaire in Form 4473. Analytically, Ms. Scheidt's Second Amendment rights attached the moment she was *required* to complete the Form, which occurred before she actually completed the Form and before she could possess the sought firearms. Ms. Scheidt's firearm possession was thus delayed, or restricted, *before* she provided any false information in the questionnaire. In this case, chronologically, it was when the firearm purveyor required Ms. Scheidt

to complete Form 4473 that her right to possess a firearm was restricted, again, that was *before* she answered any questions in the Form.

Under the Second Amendment, Ms. Scheidt is arguing that her prosecution is subject to constitutional protection and scrutiny because it is the questions themselves in Form 4473, or being required to answer questions in the Form before possession of a firearm takes place, that infringed on her Second Amendment firearm possessory rights.

The District Court found that Mr. Scheidt's false answers on Form 4473 excluded her from Second Amendment protection. But that ruling, also had the effect of finding that Congress's regulation in this case was not subject to Second Amendment evaluation. That determination is not grounded in the text of § 922(a)(6) or based on the uncontested facts of this case. Ms. Scheidt argues that the questions themselves and her possession being conditioned on answering questions is what brought her prosecution into the Second Amendment's plain text. What Congress was regulating in practice under § 922(a)(6) in Ms. Scheidt's case was whether she could *possess* a firearm possession. Specifically,

whether she may obtain a firearm from a licensed firearm purveyor based on her responses to Form 4473. Ms. Scheidt's prosecution is not excluded from Second Amendment protection solely because she committed an act of dishonesty. The questions themselves in Form 4473 and conditioning her possession of a firearm based on certain approved responses is how Congress restricted her right to firearm possession.

Certainly, it is possible that Congress's conditioning of firearm possession to the act of providing certain information may be grounded in the history and tradition of firearm regulation. But, the District Court declined to address that question or engage that constitutional analysis. As a result, the appropriate remedy here is to remand the matter to the District Court for consideration of whether the government has carried its affirmative burden to demonstrate that the restriction at issue and the conditioning of firearm possession to the types of information sought in Form 4473 is rooted in the nation's history and tradition of firearm regulation from the time of the Founding.

"The Second Amendment guarantee[s] to 'all Americans' the right to bear commonly used arms in public subject to certain reasonable,

well-defined restrictions." *Bruen*, 142 S. Ct. at 2156 (quoting *Heller*, 554 U.S. at 581). "Those restrictions, for example, limited the intent for which one could carry arms, the manner by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials." *Id.*

In Ms. Scheidt's case, § 922(a)(6)'s application resulted in her firearm possession being conditioned on the Form 4473 question of whether she was a marijuana user or addict. That condition was not so "well-defined" nor "reasonable." *Id.* Indeed, § 922(a)(6) does not define the term controlled substance "user," or "addict" and the Form(s) 4473 Ms. Scheidt completed failed to define those terms. *See* R. 21-1; App. 39-41. C.F.R. § 478.11 generally defines a controlled substance user or addict, as a:

> [A] person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use

may be drawn from evidence of a recent use or possession of a
controlled substance or a pattern of use or possession that
reasonably covers the present time, e.g., a conviction for use
or possession of a controlled substance within the past year;
multiple arrests for such offenses within the past 5 years if
the most recent arrest occurred within the past year; or
persons found through a drug test to use a controlled
substance unlawfully, provided that the test was
administered within the past year. For a current or former
member of the Armed Forces, an inference of current use may
be drawn from recent disciplinary or other administrative
action based on confirmed drug use, e.g., court-martial
conviction, nonjudicial punishment, or an administrative
discharge based on drug use or drug rehabilitation failure.

But that standard creates an unwieldly if not undefinable controlled

substance "use" definition. A firearm transferee completing Form 4473,

such as Ms. Scheidt, may likely have no legitimate notion of whether

their past, even remote past, marijuana use would require them to

provide a "yes" answer to the controlled substance interrogatory. This is

offered to show that there are substantial and obvious concerns

regarding whether Ms. Scheidt's prosecution is rooted in the "well-

defined" and "reasonable" national firearm history. *Bruen*, 142 S. Ct. at

2156. However, whether the restriction at issue was proper as a matter

of history is best reserved to the District Court with due consideration

for the five types of historical evidence articulated by this Court in

*Atkinson. See Atkinson*, 70 F.4th at 1023-24. Mr. Scheidt only seeks

reversal on the District Court's denial of her dismissal motion at *Bruen's* first prong.

To be clear, Ms. Scheidt is not arguing that Congress may never require a firearms dealer to ask questions, make inquires, or collect information incident to a firearm transfer. Certain categorical bans on firearm restrictions likely will remain Second Amendment viable under the *Bruen* framework. And, § 922(a)(6) and Form 4473 may very well serve the purpose of ensuring that firearm transfers do not result in prohibited persons acquiring a firearm. The argument here, rather, is simply that Congress's act of asking for information can be, and is in this case, subject to the Second Amendment's plain text and constitutional analysis. Congress may certainly collect information on firearm transfers, but when that collection effort restricts firearm possession, it is subject to the Second Amendment's "unqualified command" that the right to possess a firearm may only be regulated when the regulation is rooted in national history and tradition. *Bruen*, 142 S. Ct. at 2126.

## VI.  STANDARD OF REVIEW

"The standard of review for a district court's determination of a statute's constitutionality is *de novo*." *United States v. Bass*, 325 F.3d 847, 849 (7th Cir. 2003) (internal citation omitted); *see also L.D.R. by Wagner v. Berryhill*, 920 F.3d 1145, 1153 (7th Cir. 2011) (citing *United States v. Leach*, 639 F.3d 769, 772 (7th Cir. 2011) (reversed on other grounds) (this Court applying a *de novo* standard of review to a constitutional challenge to a statute). In addition, this Court has applied the *de novo* standard of review to a Second Amendment challenge to a statute. *See United States v. Meza-Rodriguez*, 798 F.3d 664, 668 (7th Cir. 2015).  As a result, the *de novo* standard controls here.

Because Ms. Scheidt raised a constitutional challenge to § 922(a)(6) before the District Court, her challenge here is not subject to plain error review. *See United States v. Miles*, 86 F.4th 734, 740 (7th Cir. 2023) (applying the plain error standard to a Second Amendment challenge not raised before the District Court). In addition, Ms. Scheidt may bring a constitutional challenge on direct appeal without a conditional plea under Rule 11 of the Federal Rules of Criminal

Procedure. *See Class v. United States*, 583 U.S. 798, 806 (2018) (internal citations omitted) (finding that the Federal Rules of Criminal Procedure "ha[ve] no application" to the kinds of constitutional claims that may be raised on direct appeal).

## VII. ARGUMENT

In *Bruen*, the Court stated that the "standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." 142 S. Ct. at 2129-30. The District Court erred in finding that the conduct at issue is not protected by the Second Amendment's plain text. Remand is necessary for the District Court to engage the second *Bruen* prong.

## A. *Holden* does not preclude Ms. Scheidt's Second Amendment challenge here.

As a preliminary matter, this Court's holding in *United States v. Holden*, 70 F.4th 1015, 1018 (7th Cir. 2023), does not foreclose Ms. Scheidt's direct appeal here. In *Holden*, this Court reversed the district court's grant of the appellee-defendant's motion to dismiss brought

17

under the Second Amendment and the *Bruen* framework. This Court concluded that whether a person was under indictment was a fact material under § 922(a)(6). *See id.* This Court further reasoned that a dishonest representation on Form 4473 regarding indictment status could not be defended by raising a Second Amendment challenge to indictment status as an underlying firearm restriction. *See id.* This Court reasoned that a "a truthful answer to the [Form 4473] question 'are you under indictment?' can be material to the propriety of a firearms sale" irrespective of whether indictment status remained a valid basis for Congress to restrict firearm possession under the *Bruen* Second Amendment framework. *Id.* (quotation marks in the original). Thus, *Holden* stands for the proposition that a Second Amendment challenge to a § 922(a)(6) count may not be successfully raised based on an attack to the underlying conduct's materiality, such as indictment status under 18 U.S.C. § 922(n). *See id.* at 1017.

Here, by contrast, Ms. Scheidt *does* contend that § 922(a)(6) suffers from an independent constitutional defect. Moreover, she is not resorting to a constitutional challenge of another statute to show her prosecution here was either facially or as-applied in violation of the

Second Amendment. *See e.g.*, *id.* at 1017 (this Court noting that the appellant-defendant in *Holden* "d[i]d not contend, and the district court did not find, that there is any constitutional problem with 922(a)(6).").

Unlike in *Holden*, Ms. Scheidt here is arguing that § 922(a)(6)'s text independently regulates the acquisition or attempted acquisition of a firearm. And, beyond text, she is arguing that the statute's application in her case required her to complete a questionnaire before she may possess a firearm and conditioned her firearm possession on the particular answers to Form 4473. Thus, before Ms. Scheidt submitted false answers, Congress had already restricted her firearm access through § 922(a)(6)'s regulatory application. That regulation of her right to possess a firearm brought her prosecution within the Second Amendment's plain text. Unlike *Holden*, Ms. Scheidt's attack on § 922(a)(6) and her prosecution under the Second Amendment is not predicated on another statute's unconstitutionality.

Moreover, as distinguished from *Holden*, Ms. Scheidt does not contend that her responses were not material under the firearm chapter. *See United States v. Queen*, 408 F.3d 337, 339 (7th Cir. 2005) (holding that a false residential address provided on Form 4473 may be

19

material under § 922(a)(6)). As applied, her argument is that the questions contained in Form 4473, that she was required to answer before she could take possession of the sought firearms, were themselves a restriction on her right to possess a firearm. Unlike *Holden*, Ms. Scheidt is not suggesting that the word "material" in § 922(a)(6) "creates a privilege to lie" rather she is arguing that the Second Amendment applies to Congress's authority to impose information requirements upon a firearm purchaser or transferee when those information requirements restrict firearm possession. 70 F.4th at 1017. In this case, § 922(a)(6), before Ms. Scheidt provided the false information, required her to provide information to the firearm retailer before she could take possession of the firearm. By conditioning firearm receipt, possession, on the production of information in § 922(a)(6), Congress had regulated her right to possess a firearm.

Furthermore, it is worth noting that the Second Amendment confers a preexisting right to keep and bear arms. *See Heller*, 554 U.S. at 594. The question under the Second Amendment and the challenge presented here is whether and how Congress may interfere with that

right by conditioning possession of a firearm on the completion of a questionnaire before possession may be accomplished.

As this Court noted in *Holden*, Congress's authority "to collect accurate information is of a different character – and stands on firmer footing" "than the power to prohibit particular people from owning guns." 70 F.4th at 1017. However, nothing in *Bruen* suggests that Congress's record collection requirements are immune from Second Amendment scrutiny when those requirements restrict firearm possession. Congress's authority may be "firmer" when collecting information related to firearm regulation, but nothing in *Bruen* suggests its authority in the information collecting realm is unlimited. *Id.*

To that point, the opposite principal may be extracted from *Bruen*; that the government's Second Amendment regulatory authority extends only to those regulations "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S. Ct. at 2127. Even when collecting information, Congress's authority to restrict firearm possession is subject to potential Second Amendment circumscription.

To find here that Congress has extra or enhanced Second Amendment authority to regulate, and conversely that Ms. Scheidt has diminished Second Amendment protection, when Congress seeks information would wade into judicial balancing of the government's proffered justification for the firearm regulation. That is the very means-end calculus *Bruen* abrogated in the Second Amendment context. *See id.* at 2126 (the Supreme Court "declin[ing] to adopt that two-part approach . . . . To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation."); *see also Atkinson*, 70 F.4th at 1020 (this Court noting that "*Bruen* leaves no room for doubt: text and history, not a means-end analysis, now define the controlling Second Amendment inquiry.").

Last, in *Holden*, the government cited Supreme Court precedent, which this Court found supported the proposition that "false statements may be punished when the government is not entitled to demand the answers—when for example, compelling a truthful statement would incriminate the speaker." 70 F.4th at 1017 (citing *United States v.*

*Kapp*, 302 U.S. 214, 218 (1937); *Dennis v. United States*, 384 U.S. 855, 866–67 (1966); *United States v. Knox*, 396 U.S. 77, 79 (1969)). None of those dated cases, however, analyzed the Second Amendment framework the Supreme Court has now demanded under *Bruen*. As a result, the facts and posture of those cases are distinguishable.

The question here is not whether Ms. Scheidt may lie on Form 4473. The question here, rather, under *Bruen's* first prong, is when Congress conditioned Ms. Scheidt's firearm possession on providing information, and when such information even if given accurately could result in the denial of her firearm possession, is that a firearm restriction under the Second Amendment's plain text? Again, Ms. Scheidt's challenge here is that the Second Amendment *does* impose limitations on Congress's authority to collect information when those collection efforts could result in a loss or diminution of the right to possess a firearm. Ms. Scheidt is not claiming she may evade responsibility because she has a privilege to lie, she is arguing that Congress may only ask questions restricting firearm possession when that restriction is historically rooted. *Kapp*, *Knox*, and *Dennis* would be useful if those cases analyzed a regulation restricting the exercise of

firearm rights or analyzed the scope of Congress's textual and historical power to regulate firearm possession. Because they do not, the cases have no application in Ms. Scheidt's challenge.

## B. The District Court erred in concluding that § 922(a)(6) and Ms. Scheidt's prosecution were not subject to the Second Amendment's plain text.

At *Bruen's* first prong, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Range v. Attorney General*, 69 F.4th 96, 100 (3d Cir. 2023) (quoting *Bruen*, 142 S. Ct. at 2126). The Supreme Court has reviewed § 922(a)(6), but not under the Second Amendment. *See Abramski v. United States*, 573 U.S. 169, 178-179 (2014) (finding a misrepresentation regarding the actual buyer material under § 922(a)(6) and 18 U.S.C. § 924(a)(1)(A)); *see Huddleston v. United States*, 415 U.S. 814, 819 (1974) (finding that § 922(a)(6) applied to firearm redemptions applied at a pawnshop, though not a firearm sale.).

Congress created § 922(a)(6) as part of the amended Chapter 44 of the federal criminal code pursuant to the larger 1968 Omnibus Crime Control and Safe Streets Act of 1968. *See Huddleston*, 415 U.S. at 816.

The Secretary of Treasury, in turn, created Form 4473 as part of its enforcement of the Crime Control and Safe Streets Act. *See id.*

"When Congress enacted the provisions [under Chapter 44 of the federal criminal code], it was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Id.* at 824. "Congress determined that the ease with which firearms could be obtained contributed significantly to the prevalence of lawlessness and violent crime in the United States." *Id.* The "Crime Control and Safe Streets Act of 1968" is "thus aimed at restricting *public* access to firearms." *Id.* (emphasis added). The purpose of § 922(a)(6) as part of Chapter 44 "was to [curb] crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency." *Id.* (internal citations omitted).

Under § 922(a)(6), "[t]he principal agent of federal enforcement is the dealer." *Id.*; *see also* 18 U.S.C. §§ 922(a)(1) and 923(a). "[H]e is required to keep records of sale or *other disposition.*" *Id.* (internal citations omitted) (emphasis added); *see also* 18 U.S.C. § 922(b)(5).

Congress established the Secretary of Treasury's authority to issue Form 4473 in 18 U.S.C. § 923(g)(1).

Section 922(a)(6), is therefore, part of the Congress's byzantine patchwork of firearm regulations. Section 922(a)(6) itself does not state or define what constitutes the "material information bearing on the lawfulness of a sale." However, the statute and attending Form 4473, effectively, attempt to capture other possession prohibitions and transfer restrictions found in the firearm chapter, for example, in 18 U.S.C. §§ 922(d), 922(g), and 922(t). Sections 922(d) and 922(t), among other things, prohibit the transfer of firearms from a licensed firearm purveyor to a person convicted of felony-level offenses, a person under indictment, or a controlled substance user. Section 922(g), prohibits the direct possession of a firearm by a person previously convicted of a felony-level offense, subject to indictment, or who is a user or addict of a controlled substance. Section 922(a)(6), and by extension Form 4473, require that a person attempting to acquire a firearm provide information responsive as to whether they are otherwise a prohibited person or whether the transfer of a firearm to them is prohibited under the federal firearm chapter.

The structure of Chapter 44, as shown, is to use federal firearm dealers to condition the receipt of a person's firearm possession on the act of the person, as the transferee, providing information regarding their possible prohibitions. A person cannot obtain a firearm from the firearm dealer unless and until they provide the requested information on their prohibited status through Form 4473. Section 922(a)(6)'s application generally, and specifically, in Ms. Scheidt's case, restricted her right to posses a firearm the moment her possession was conditioned on her providing information. The possible constitutional deprivation, accordingly, occurred here in each of the five challenged counts before Ms. Scheidt provided the false information, but occurred when the firearm dealer directed her to complete Form 4473. That again, was before she could take possession of the sought firearm in each count charged under § 922(a)(6).

In addition, 922(a)(6)'s application here cannot be considered a mere regulation on "the commercial *sale* of arms," which the Supreme Court has suggested are not subject to Second Amendment scrutiny. *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (internal citations omitted) (emphasis added). "[A]cquisition, as used in §

27

922(a)(6), is not ambiguous, but clearly includes any person, by definition, who comes into *possession*, control, or power of disposal of a firearm" by means other than exclusively a firearm sale. *Huddleston*, 415 U.S. at 823 (emphasis added). As stated in *Huddleston*, the statute applies to pawn redemptions. *See id.* Because the statute applies to any disposition of a firearm, and not solely commercial sales, the statute is not a mere commercial regulation. Indeed, in *Huddleston*, the Supreme Court noted that to exclude non-sales from the statute would contravene Congress's statutory purpose, which was to keep firearms out of the hands of the public. 415 U.S. at 822 (Supreme Court noting that had "Congress's desire been to exempt a transaction of this kind [a non-sale transfer of a firearm] through a pawnbroker, it would have artfully worded the definition so as to exclude it."). In fact, the records a firearm dealer is required to keep relate to all dispositions, not sales exclusively. *See id.* at 826; *see also* § 922(d).

Accordingly, § 922(a)(6) functions as a front-end barrier to firearm possession in the same manner as the possessory restrictions found in § 922(g). The statute is part of Congress's effort at the time to prevent firearm possession by certain categories of possessors, and to restrict

public firearm access. If a potential firearm transferee is an otherwise prohibited person as set forth in § 922(g), § 922(a)(6) and Form 4473 prevents or at least attempt to prevent that person from acquiring and possessing the sought firearm from the licensed firearm dealer.

As to *Bruen's* first prong, whether the text of the Second Amendment applies to the regulated conduct, the regulated conduct at issue in § 922(a)(6) includes in part the acquisition or attempted acquisition of a firearm. Therefore, the Second Amendment's plain text facially covers and protects Ms. Scheidt's conduct at issue here – the regulatory means, process, and potential consequences by which she could obtain, possess, and receive a firearm. *See e.g.*, *Range*, 69 F.4th at 103 (emphasis added) (the Third Circuit holding at *Bruen's* first step that "[h]aving determined that Range is one of 'the people,' we turn to the easy question: whether § 922(g)(1) regulates Second Amendment conduct. It does. *Range's request—to possess* a rifle to hunt and a shotgun to defend himself at home—tracks the constitutional right . . . . So the Second Amendment's plain text covers Range's conduct and the Constitution presumptively protects that conduct.").

Like the prohibitions found in § 922(g), § 922(a)(6) plainly regulates a transferee's firearm possessory interests through its regulation of who may acquire a firearm from a firearms dealer. *See United States v. Forbis*, --- F. Supp. 3d ---, 2023 WL 5971142, *3 (N.D. Okla. Aug. 17, 2023) (finding § 922(g)(1) unconstitutional as-applied, and concluding the conduct of firearm possession is constitutionally protected at *Bruen's* first step); *United States v. Bullock*, --- F. Supp. 3d ---, 2023 WL 4232309, at *19-20 (S.D. Miss. June 28, 2023) (same); *United States v. Quailes*, --- F. Supp. 3d ---, 2023 WL 5401733, *8 (E.D. Pa. Oct. 21, 2023) (same); *United States v. Harper*, No. 1:21-CR-0236, 2023 WL 5672311, at *6 (E.D. Pa. Sept. 1, 2023) (same), (noting *Range's* finding that the Second Amendment applied to a request to possess a firearm); *United States v. Prince*, No. 22 CR 240, 2023 WL 7220127, * 4-5 (N.D. Ill. Nov. 2, 2023) (finding § 922(g)(1) facially unconstitutional and concluding that possession of a firearm by a felon is Second Amendment protected at *Bruen's* first prong); *United States v. Griffin*, Case No. 21-cr-00693, 2023 WL 8281563, *4 (N.D. Ill. Nov. 30, 2023) (finding that firearm possession and restricting firearm possession protected by the Second Amendment's plain text at *Bruen's* first prong).

When Ms. Scheidt sought to purchase a firearm, her firearm acquisition was regulated by § 922(a)(6) and the attending Form 4473. Her possession of a firearm was conditioned on her first providing information regarding her prohibited status. The requirement that she provide the requested information before she may possess a firearm brings the statute within the Second Amendment's plain text as a restriction on the right to keep and bear arms. Certainly, Congress's demand that Ms. Scheidt or any person provide information on Form 4473 may be useful, it may be efficacious. But the request is also a firearm possession restriction, no matter how slight. The District Court erred by finding that Ms. Scheidt's conduct was subject to no Second Amendment protection, and she urges this Court to remand the matter for consideration of whether § 922(a)(6)'s regulation is rooted in the history and tradition of firearms regulation. *See Bruen*, 142 S. Ct. at 2130.

## VIII. CONCLUSION

For the foregoing reasons, Ms. Scheidt asks this Court to reverse the District Court's denial of her motion to dismiss. Specifically, this Court should reverse the District Court's flawed application of *Bruen's*

first prong concluding that § 922(a)(6) does not regulate conduct covered by the Second Amendment's plain text and that Ms. Scheidt's prosecution was not entitled to Second Amendment protection. Ms. Scheidt asks this Court to remand for proper consideration of the remaining portion of the *Bruen* test --- whether § 922(a)(6) is consistent with the nation's history and tradition of firearm regulation.[2]

## IX. STATEMENT CONCERNING ORAL ARGUMENT

Pursuant to Rule 34(a) of the Federal Rules of Appellate Procedure and Circuit Rule 34(f), Ms. Scheidt requests oral argument. Given the recency of the *Bruen* framework, Ms. Scheidt submits that oral argument will assist this Court's review of the District Court's conclusion.

---

[2] Ms. Scheidt was not a prohibited firearm possessor at the time she completed Form 4473. As a result, a government argument that she is not among "the People" the Second Amendment protects based on her conduct at issue, not her status, would not prevail. *See Range*, 69 F.4th at 103 (the Third Circuit rejecting "the Government's contention that only law-abiding, responsible citizens are counted among "the people" protected by the Second Amendment . . . .").

Date:  <u>December 11, 2023</u>

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

By:    <u>s/Chad J. Pennington</u>
        200 E. Main Street, Suite 905
        Fort Wayne, IN  46802
        Phone: (260) 422-9940
        Fax: (260) 422-9954
        E-mail: Chad_Pennington@fd.org

## CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)(C)

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32 in that it contains 6516 words as shown by Microsoft Word 2016 used in preparing this brief.

Date:  <u>December 11, 2023</u>

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Defendant-Appellant Echo Scheidt

## CERTIFICATE OF SERVICE

I hereby certify that on <u>December 11, 2023,</u> I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Defendant-Appellant Echo Scheidt

No. 23-2567

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

**UNITED STATES OF AMERICA,**
        **Plaintiff-Appellee,**

        **v.**

**ECHO A. SCHEIDT**
        **Defendant-Appellant**

Appeal from the United States District Court
for the Northern District of Indiana
Case No.  1:22-CR-49
The Honorable Chief Judge Holly Brady

**ATTACHED REQUIRED SHORT APPENDIX
OF DEFENDANT-APPELLANT ECHO A. SCHEIDT**

Northern District of Indiana Federal
Community Defenders, Inc.
Chad J. Pennington
Attorney for Defendant-Appellant
Echo A. Scheidt
200 E. Main Street, Suite 905
Fort Wayne, IN 46802
Telephone: (260) 422-9940
Fax: (260) 422-9954
Email: Chad_Pennington@fd.org

## TABLE OF CONTENTS FOR APPENDIX

1.    Certificate of Compliance with Circuit Rule 30.........................................App. 1

2.    *Indictment* [DE 1] entered August 24, 2022, in the United States
      District Court for the Northern District of Indiana, Fort Wayne
      Division in Case No. 1:22-CR-49 ..............................................................App. 2

3.    *Amended Judgment in a Criminal Case* [DE 76-1] entered October 19,
      2023, in the United States District Court for the Northern District of
      Indiana, Fort Wayne Division in Case No. 1:22-CR-49............................App. 8

4.    *Motion to Dismiss Counts 1-5 of Indictment* [DE 21] entered February
      10, 2023, in the United States District Court for the Northern District
      of Indiana, Fort Wayne Division in Case No. 1:22-CR-49......................App. 16

5.    *Motion to Dismiss Counts 1-5 of Indictment Exhibit A (Form 4473)* [DE
      21-1] entered February 10, 2023, in the United States District Court
      for the Northern District of Indiana, Fort Wayne Division in Case No.
      1:22-CR-49 .................................................................................................App. 39

6.    *Opinion and Order* [DE 31] entered April 10, 2023, in the United
      States District Court for the Northern District of Indiana, Fort Wayne
      Division in Case No. 1:22-CR-49 ............................................................App. 42

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30**

The undersigned counsel hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix.

Date: <u>December 11, 2023</u>

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Defendant-Appellant Echo A. Scheidt

REDACTED
SEALED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION



FILED

AUG 24 2022

At _____ M
GARY L. BELL, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **INDICTMENT** |
| | ) | |
| v. | ) | Cause No. 1:22-CR- 49 |
| | ) | Violations: 18 U.S.C. § 922(a)(6) |
| ECHO A. SCHEIDT | ) | 924(a)(2), and 18 U.S.C. § 1001(a) |

**THE GRAND JURY CHARGES:**

## COUNT 1

On or about February 6, 2022, in the Northern District of Indiana,

### ECHO A. SCHEIDT,

defendant herein, in connection with the acquisition and attempted acquisition

of a firearm from In-laws & Outlaws Gun Shop, a licensed dealer of firearms

within the meaning of Chapter 44, Title 18, United States Code, knowingly

made a false and fictitious statement, to In-laws & Outlaws Gun Shop, which

statement was intended and likely to deceive In-Laws & Outlaws Gun Shop as

to a fact material to the lawfulness of such sale of the firearm to the defendant

under Chapter 44 of Title 18, in that the defendant represented that she

resided at 1327 W Euclid Ave, and the defendant denied she was an unlawful

user of marijuana, knowing that information to be false;

All in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

Case: 23-2567 Document: 13 Filed: 12/11/2023 Pages: 88

**THE GRAND JURY FURTHER CHARGES:**

Case: 23-2567     Document: 13     Filed: 12/11/2023     Pages: 88

## COUNT 2

On or about March 4, 2022, in the Northern District of Indiana,

**ECHO A. SCHEIDT,**

defendant herein, in connection with the acquisition and attempted acquisition of a firearm from In-laws & Outlaws Gun Shop, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement, to In-laws & Outlaws Gun Shop, which statement was intended and likely to deceive In-Laws & Outlaws Gun Shop as to a fact material to the lawfulness of such sale of the firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented that she resided at 1327 W Euclid Ave, and the defendant denied she was an unlawful user of marijuana, knowing that information to be false;

All in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 3

On or about March 10, 2022, in the Northern District of Indiana,

### ECHO A. SCHEIDT,

defendant herein, in connection with the acquisition and attempted acquisition of a firearm from Trading Post, LLC, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement, to Trading Post, LLC, which statement was intended and likely to deceive Trading Post, LLC, as to a fact material to the lawfulness of such sale of the firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented that she resided at 1327 W Euclid Ave, and the defendant denied she was an unlawful user of marijuana, knowing that information to be false;

All in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

Case: 23-2567    Document: 13    Filed: 12/11/2023    Pages: 88

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 4

On or about March 19, 2022, in the Northern District of Indiana,

### ECHO A. SCHEIDT,

defendant herein, in connection with the acquisition and attempted acquisition of a firearm from Trading Post, LLC, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement, to Trading Post, LLC, which statement was intended and likely to deceive Trading Post, LLC as to a fact material to the lawfulness of such sale of the firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented that she resided at 1327 W Euclid Ave, and the defendant denied she was an unlawful user of marijuana, knowing that information to be false;

All in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

Case: 23-2567 Document: 13 Filed: 12/11/2023 Pages: 88

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 5

On or about April 5, 2022, in the Northern District of Indiana,

### ECHO A. SCHEIDT,

defendant herein, in connection with the acquisition and attempted acquisition of a firearm from In-laws & Outlaws Gun Shop, a licensed dealer of firearms within the meaning of Chapter 44, Title 18, United States Code, knowingly made a false and fictitious statement, to In-laws & Outlaws Gun Shop, which statement was intended and likely to deceive In-Laws & Outlaws Gun Shop as to a fact material to the lawfulness of such sale of the firearm to the defendant under Chapter 44 of Title 18, in that the defendant represented that she resided at 1327 W Euclid Ave, and the defendant denied she was an unlawful user of marijuana, knowing that information to be false;

All in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2).

**THE GRAND JURY FURTHER CHARGES:**

## COUNT 6

On or about July 31, 2022, in the Northern District of Indiana,

### ECHO A. SCHEIDT,

defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation, in any matter within the jurisdiction of the executive branch of the Government of the United States, that is, an official criminal investigation conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives;

All in violation of 18 U.S.C. § 1001(a).

A TRUE BILL

*/s/Foreperson*
Foreperson

CLIFFORD D. JOHNSON
UNITED STATES ATTORNEY

By:   */s/Brent A. Ecenbarger*
Brent A. Ecenbarger
Assistant United States Attorney

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

UNITED STATES OF AMERICA

Plaintiff,

vs.

ECHO A SCHEIDT

Defendant.

CASE NUMBER: 1:22CR49-001

USM Number: 18493-510

MICHELLE F KRAUS - FCD
DEFENDANT'S ATTORNEY

## ** AMENDED JUDGMENT IN A CRIMINAL CASE

**THE DEFENDANT** pled guilty to Counts 1, 2, 3, 4, 5 and 6 of the Indictment on May 1, 2023.

**ACCORDINGLY,** the Court has adjudicated that the Defendant is guilty of the following offense:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number |
|---|:---:|:---:|
| 18:922(a)(6) and 924(a)(2): FALSE AND FICTITIOUS STATEMENT TO LICENSED DEALER OF FIREARMS | February 6, 2022 | 1 |
| 18:922(a)(6) and 924(a)(2): FALSE AND FICTITIOUS STATEMENT TO LICENSED DEALER OF FIREARMS | March 4, 2022 | 2 |
| 18:922(a)(6) and 924(a)(2): FALSE AND FICTITIOUS STATEMENT TO LICENSED DEALER OF FIREARMS | March 10, 2022 | 3 |
| 18:922(a)(6) and 924(a)(2): FALSE AND FICTITIOUS STATEMENT TO LICENSED DEALER OF FIREARMS | March 19, 2022 | 4 |
| 18:922(a)(6) and 924(a)(2): FALSE AND FICTITIOUS STATEMENT TO LICENSED DEALER OF FIREARMS | April 5, 2022 | 5 |
| 18:1001(a):  FALSE, FICTITIOUS, AND FRAUDULENT STATEMENT TO BUREAU OF ALCOHOL, TOBACCO, FIREARMS, AND EXPLOSIVES | July 31, 2022 | 6 |

The Defendant is sentenced as provided in pages 3 through 8 of this Judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

App. 8

IT IS ORDERED that the Defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this Judgment are fully paid. If ordered to pay restitution, the Defendant must notify the Court and United States Attorney of any material change in economic circumstances.

| | |
|---|---|
| | August 3, 2023 |
| | Date of Imposition of Judgment |
| | s/ Holly A. Brady |
| | Signature of Judge |
| | Holly A. Brady, Judge, U. S. District Court |
| | Name and Title of Judge |
| | October 19, 2023 |
| | Date |

**\*\* Amended to reflect that Defendant is sentenced to be imprisoned for 18 months to include 12 months and 1 day imprisonment in the United States Bureau of Prisons and 6 months of home detention as a condition of supervised release and to add language to Discretionary Condition No. 20.**

App. 9

## IMPRISONMENT

The Defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **18 MONTHS** to include **12 MONTHS AND 1 DAY** in the United States Bureau of Prisons and **6 MONTHS** of home detention as a condition of supervised release on Counts 1, 2, 3, 4, 5 and 6 which will run concurrent with one another.

The Court makes the following recommendations to the Bureau of Prisons:

1. That the Defendant serve her term of imprisonment at the federal facility in Pekin, Illinois to facilitate visitation with family and friends.

2. That the Defendant be considered for enrollment in any Evidence Based Recidivism Reduction Programs or other programs implemented by the BOP to allow the Defendant to earn early release credits under the First Step Act.

3. That the Defendant participate in residential re-entry programs specific to her needs, as available under the First Step Act.

4. That the Defendant be assessed for participation in the Evidence Based Recidivisim Reduction Program (pursuant to the First Step Act) as well as any recidivism programs developed or to be developed under 34 U.S.C. § 605.

The Defendant shall surrender to the Federal Bureau of Prisons as notified by the United States Marshal's Service.

## RETURN

I have executed this Judgment as follows:

    Defendant delivered _____ to _____ at _____, with a certified copy of this Judgment.

_____
UNITED STATES MARSHAL

By: _____
    DEPUTY UNITED STATES MARSHAL

App. 10

## SUPERVISED RELEASE

Upon release from imprisonment, the Defendant shall be on supervised release for a term of **30 MONTHS** on Counts 1, 2, 3, 4, 5 and 6 which shall run concurrent with one another.

## CONDITIONS OF SUPERVISED RELEASE

**While the Defendant is on supervised release pursuant to this Judgment, the Defendant shall comply with the following conditions as required by 18 U.S.C. § 3583(d):**

1. The Defendant shall not commit another Federal, State, or local crime, during the period of supervision.

2. The Defendant shall not unlawfully possess a controlled substance.

3. The Defendant shall refrain from any unlawful use of a controlled substance.

4. The Defendant shall submit to a drug test within 15 days of release on supervision.

5. The Defendant shall submit to at least two periodic tests thereafter for use of a controlled substance.

6. The Defendant shall cooperate in the collection of a DNA sample from the Defendant, if the collection of such a sample is authorized pursuant to Section 3 of the DNA Analysis Backlog Elimination Act of 2000 and 34 U.S.C. § 40702.

**The Defendant shall comply with the following discretionary conditions as provided by 18 U.S.C. §§ 3563(b)(1)-(23) and 3583(d):**

7. The Defendant shall not knowingly leave the federal judicial district of the Northern District of Indiana, unless granted permission to leave by the Court or a probation officer. A map of the federal judicial district of the Northern District of Indiana and its 32 counties can be found at the website for United States Probation and Pretrial Services (http://www.innp.uscourts.gov/files/inncountymapjpg).

8. The Defendant shall report to the probation officer as reasonably directed by the Court or the probation officer, which includes the requirement that the Defendant report in person to the probation office in the district to which the Defendant is released for supervision within 72 hours of release from the custody of the Bureau of Prisons.

9. The Defendant shall answer inquiries by a probation officer pertaining to the Defendant's supervision and notify the probation officer within 72 hours of any change of residence or change of employer. This condition does not prevent the Defendant from invoking her Fifth Amendment privilege against self-incrimination.

10. The Defendant shall notify the probation officer within 72 hours of being arrested or questioned by a police officer.

11. The Defendant shall permit a probation officer to visit her at her home between the hours of 8:00 AM to 8:00 PM. A probation officer can make an oral or written request to the Court to allow for a reasonable alternative time period or place for the visit. The

App. 11

Defendant shall permit confiscation of any contraband observed in plain view by the probation officer.

12. The Defendant shall make reasonable effort to maintain employment at a lawful occupation, unless excused by the probation officer for acceptable reasons (e.g., schooling, training, child care, elder care, disability, age, or serious health condition) or shall pursue a course of study or vocational training that will equip the defendant for employment at a lawful occupation.

13. The Defendant shall perform 20 hours per week of community service, not to exceed 400 hours, if the Defendant is unemployed for a time period exceeding 60 days within the first year of supervised release.

14. The Defendant shall not knowingly possess a firearm, ammunition, destructive device, or any other dangerous weapon.

**The Defendant shall comply with the following discretionary conditions as provided by U.S.S.G. § 5D1.3:**

15. The Defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency, without the permission of the Court.

16. The Defendant shall participate in a program approved by the United States Probation Office for substance abuse, which may include testing for the detection of alcohol, controlled substances, or illegal mood-altering substance, if necessary, after evaluation at the time of release.

17. The Defendant shall participate in a mental health program approved by the United States Probation Office, if necessary, after evaluation at the time of release.

18. The Defendant shall pay all or part of the costs for participation in the above programs not to exceed the sliding fee scale as established by the Department of Health and Human Services and adopted by this Court, as the U.S. Probation Office determines that the Defendant is financially capable of paying. Failure to pay due to financial inability shall not be grounds for revocation.

19. If a fine is imposed and has not been paid upon release to supervised release, the Defendant shall adhere to an installment schedule to pay that fine.

**20.** The Defendant shall participate in the Location Monitoring Program on Home Detention for a period of 6 months to commence upon release from the Bureau of Prisons. The type of electronic monitoring equipment and technology to be used shall be determined by the probation office, pursuant to Monograph 113 (Part F. Location Monitoring). The Defendant shall abide by all technology requirements and program restrictions.

App. 12

## DIRECTIVE TO PROBATION

Within 72 hours of Defendant's release from prison, the probation officer is to meet with and remind the Defendant of the conditions of his supervision and also to consider whether to recommend to the Court any modifications of or additions to those conditions in light of any changes in the Defendant's circumstances since the sentencing hearing. Consistent with *United States v. Siegel* (7th Cir. May 29, 2014), the Court also directs the Probation Office to notify the Court within 30 days of Defendant's placement on supervision so that it may consider any appropriate modifications to the Defendant's supervised release and schedule a hearing on that topic, if necessary. The Defendant may also request a modification of these conditions at any time by filing a written motion with the Court.

App. 13

## CRIMINAL MONETARY PENALTIES

The Court finds that the Defendant does not have the ability to pay a fine and waives the imposition of a fine in this case due to the Defendant's inability to pay.

The Court **ORDERS** the Defendant to pay the special assessment of $600.00 to the U.S. District Court Clerk's Office, 1108 E. Ross Adair Courthouse, 1300 South Harrison Street, Fort Wayne, IN 46802, which shall be due immediately.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $600.00 | NONE | NONE |

The Defendant shall receive credit for all payments previously made toward any criminal monetary payments imposed.

7

App. 14

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein.  These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed)

_____     _____
Defendant                                                                          Date


_____     _____
U.S. Probation Officer/Designated Witness                      Date

App. 15

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CASE NUMBER: **1:22-CR-49** |
| | ) | |
| ECHO A. SCHEIDT | ) | |
| | ) | |
| **Defendant.** | ) | |

## MOTION TO DISMISS COUNTS 1-5 OF INDICTMENT

COMES NOW Defendant Echo A. Scheidt, by her counsel Michelle Kraus, moves to dismiss counts 1-5 of the indictment against her on the grounds that 18 U.S.C. § 922(a)(6) is unconstitutional and because the indictment fails to state an offense under Rule 12(b) of the Federal Rules of Criminal Procedure. Ms. Scheidt's motion to dismiss is based on the Second Amendment to the United States Constitution, the United States Supreme Court's holding in *N.Y. Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022), and District Judge Robert Miller's October 31, 2022, opinion and order in *United States v. Holden*, 22-CR-30, ECF No. 32 (N.D. Ind. Oct. 31, 2022). In moving to dismiss, Ms. Scheidt is raising a facial and as-applied constitutional challenge to § 922(a)(6).

### Introduction

On August 24, 2022, the government filed a six-count indictment. *See generally* ECF No. 1. In counts 1-5, the government alleges violations of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (the penalty provision). *See id.* at 5-6. In counts 1-5, the government claims, that on various dates in 2022, Ms. Scheidt provided "knowingly" "false and fictious" statements regarding "a fact material to the lawfulness of" the "sale of" a firearm to two different firearm purveyors, In-laws & Outlaws

App. 16

Gun Shop and Trading Post, LLC, in "connection with the acquisition and attempted acquisition of a firearm . . ." *Id.* at 1*; see generally id.* The indictment alleges that the false statements regarding "a fact material" are: 1.) that Ms. Scheidt "represented that she resided at 1327 W. Euclid Ave[nue] and that [she] denies she was an unlawful user of marijuana, knowing that information to be false." *Id.* at 1; *see generally id.* Counts 1-5 occurred allegedly on assorted dates between February and April of 2022.

<u>Argument Summary</u>

Section 922(a)(6) is no longer a legitimate constitutional criminal regulation after *Bruen*. Ms. Scheidt's instant motion is, in part, a claim that she, indeed anyone, is immune from prosecution, a finding of guilt, and state sanction under § 922(a)(6), post-*Bruen*, because: 1.) the statute infringes on the Second Amendment right to keep and bear, to possess, firearms by conditioning firearm possession on impermissible criteria including, namely, indictment status and marijuana use; 2.) Ms. Scheidt is among "the people" the Second Amendment protects; and 3.) the statute facially cannot survive the history and tradition scrutiny test the Supreme Court now demands in analyzing firearm regulations under *Bruen*. Accordingly, this Court should grant Ms. Scheidt's request to dismiss the indictment as to counts 1-5.

The core of this case as stated in counts 1-5, is that Ms. Scheidt allegedly submitted the false material information on the Bureau of Alcohol, Tobacco, and Firearm's ("ATF") Form 4473 ("Form 4473"). *See generally id.* Form 4473 requires that a person attempting to acquire a firearm from a firearm dealer or purveyor, complete a questionnaire before they possess the sought firearm. *See* Ex. A (Form 4473); *see also* Form 4473 Blank https://www.justice.gov/usao-nh/page/file/1245526/download (last accessed February 10, 2023). Among other things, Form 4473 requires that the firearm buyer/transferee state whether they are "under indictment or information in any court for a felony, or any other crime for which the judge could imprison you

2

for more than one year," and whether they are a "user or addict of a controlled substance[.]" *See* Ex. A. Form 4473 itself does not define the term "user" or "addict" of a controlled substance. At issue here, as alleged in counts 1-5, is that Ms. Scheidt misrepresented that she was not a "user" of marijuana. The Form does not state that "user" means active marijuana use at the time of firearm possession, active use at the time the Form is being completed, not active use but still under the effects of the use when the Form is being completed, or prior use within a specific time period, for example, any use for the proceeding day, week, month, or year. What it means to "use" a controlled substance is not clearly nor readily defined in the Form. In effect, any person, and specifically Ms. Scheidt, who as ever used marijuana in completing the Form, is forced to guess as to the whether the term "user" applies to them.

Though not stated on the Form, the Attorney General has promulgated a joint definition of the terms "user" and "addict" that is no less unworkable:

> Unlawful user of or addicted to any controlled substance. A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician. Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year.

27 C.F.R. § 478.11. Under the C.F.R. a person, such as Ms. Scheidt may be a "user" if their use occurred potentially within the last five years. Such an extreme, malleable, and broad standard of "use" of a controlled substance as an applied basis to deprive a person of their constitutionally

protected act of firearm possession is anathema to the national historical practice of restricting fire possession, and consequently, fails the *Bruen* test.

Further, the government has failed to state an offense in counts 1-5. Form 4473 does not align with §§ 922(a)(6), and in fact, Form 4473 expands firearm-related criminal liability far beyond the text of § 922(a)(6) and the concomitant firearm chapter, Chapter 44. *See* Chapter 44, 18 U.S.C. §§ 921 et seq. As set forth below, though Form 4473 purportedly is based on the firearm chapter, the information sought in Form 4473 is far broader and inconsistent with Chapter 44's expressed informational demands. Consequently, Ms. Scheidt's alleged omissions in completing Form 4473 is not dispositive as to whether she violated § 922(a)(6), or whether she failed to provide the required firearm transferee information under the firearm criminal chapter. In this case, even assuming Ms. Scheidt did not accurately complete Form 4437, the facts alleged still do not establish violations of § 922(a)(6) as the alleged false information she provided *is not material* to the sale or disposition of a firearm.

Furthermore, as applied, the government's claim that Ms. Scheidt's marijuana use justifies a front-end restriction of her Second Amendment right to possess – keep and bear – firearms fails to state an actual offense. To that point, on October 6, 2022, President Joseph R. Biden issued a proclamation pardoning federal felony convictions for simple marijuana possession. *See President Joseph R. Biden's October 6, 2022, Presidential Proclamation* https://www.whitehouse.gov/briefing-room/presidential-actions/2022/10/06/granting-pardon-for-the-offense-of-simple-possession-of-marijuana/ (last accessed February 10, 2023). President Biden's pardon applies to marijuana possession occurring "on or before the date of this proclamation, regardless of whether they have been charged with or prosecuted for this offense [felony simple marijuana possession] on or before the date of this proclamation." *Id.*; *see also* 21

4

§ U.S.C. 844. The presidential pardon compels dismissal as Ms. Scheidt was no longer "an unlawful user" of a controlled substance at the time of her alleged firearm conduct. As such, dismissal of counts 1-5 is warranted based on the references to Ms. Scheidt's alleged marijuana use.

I.   **Under *Bruen*, § 922(a)(6), violates the Second Amendment, as the statute burdens and restricts the constitutionally protected conduct of firearm possession and is inconsistent with the nation's firearm history and tradition.**

The Second Amendment to the United States Constitution provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." *In District of Columbia v. Heller*, the Supreme Court held the Second Amendment enshrined a pre-existing *individual* right to possess and use firearms. 554 U.S. 570, 592, 624 (2008). In *Bruen*, the Supreme Court held "consistent with *Heller* . . . the Second [Amendment] protect[s] an individual's right to carry a handgun for self-defense outside the home . . . ." 142 S. Ct. at 2122.

Two years after *Heller*, in *McDonald v. City of Chicago*, the Court reaffirmed Heller's "central holding." 561 U.S. 742, 780 (2010). The Court reasoned that the right to keep and bear arms as "fundamental to our scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." *Id.* at 767. The Court cautioned that Second Amendment protections from state interference and regulation should not be treated "as a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Id.* at 780.

Before *Bruen*, applying *Heller* and *McDonald*, reviewing courts "had coalesced around a two-step framework when assessing Second Amendment claims, combining a historical analysis with means-end scrutiny." *United States v. Quiroz*, 4:22-cr-104-DC, Order, ECF No. 82, at p. 4

(W.D. Tex. Sept. 19, 2022) (internal citation omitted) (abrogating § 922(n) on Second Amendment

grounds applying *Bruen*).

> But in *Bruen*, Justice Thomas stated the two-step[, means-end] approach was one
> step too many.  In its place, Justice Thomas [elucidated] a new standard courts must
> follow: When the Second Amendment's plain text covers an individual's conduct,
> the Constitution presumptively protects that conduct. The government must then
> justify its regulation by demonstrating that it is consistent with the Nation's
> historical tradition of firearm regulation. Only then may a court conclude that the
> individual's conduct falls outside the Second Amendment's unqualified command.
> So[,] the threshold question is whether the Second Amendment's plain text covers
> Defendant's conduct.

*Id.* at 5 (internal citation omitted). "Ultimately, as understood in 2022, the Second Amendment

protects rights that are enshrined with the scope they were understood to have when the people

adopted them" and Second Amendment rights are no longer subject to balancing of the purported

state interest.  *Holden*, 22-CR-30, ECF No. 32, at p. 6.

Applying the *Bruen* test, "the government may not simply posit that [a] regulation

promotes an important interest." 142 S. Ct. at 2126.  This test requires courts to "consider whether

historical precedent . . . evinces a comparable tradition of regulation."  *Id.* at 2131-32. If "no such

tradition" exists, then the statute being challenged is unconstitutional.  *Id.* at 2132.  In the event

that there are "multiple plausible interpretations" of an ambiguous historical record, a reviewing

court must "favor the one that is more consistent with the Second Amendment's command." *Id.* at

2141 n.11; *see also id.* at 2139 (concluding that where "history [is] ambiguous at best," it "is not

sufficiently probative to defend [a statute]"). The "[g]overnment bears the burden" of

"affirmatively prov[ing] that its firearms regulation is part of the historical tradition that delimits

the outer bounds of the right to keep and bear arms."  *Id.* at 2127.

To summarize, post-*Bruen* the "standard for applying the Second Amendment" to a

challenged firearm regulation now requires a reviewing court to do the following: 1.) if the

Second Amendment's "plain text" covers an individual's conduct, courts must presume the Constitution "protects that conduct[;]" 2.) to rebut this presumption of constitutional protection, the government must show that the challenged firearm restriction is "consistent with the Nation's historical tradition of firearm regulation[:]" 3.) however, if the government cannot do so, the law is unconstitutional. *See id.* at 2129–30 (quotations omitted). Because "constitutional rights are enshrined with the scope they were understood to have when the people adopted them," this analysis is tethered to the historical tradition in place when the "Second Amendment was adopted in 1791." *Id.* at 2136 (citation omitted). Crucially, in *Bruen,* the United States Supreme Court opined that, "[t]he Second Amendment guaranteed to *all Americans the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions*." *Id.* at 2156 (internal citations omitted) (emphasis added).

   A.  *Section 922(a)(6) fall within the Second Amendment's Protective Ambit.*

Section 922(a)(6) criminalizes the act of "knowingly [making] any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive [a licensed] importer, manufacturer, dealer, or collector" regarding "*any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter*." (emphasis added). The "chapter" referred to in the statutory text is Chapter 44, Firearms, of the United States Criminal Code. *See* 18 U.S.C. §§ 921-934. Thus, under § 922(a)(6), a person attempting to acquire a firearm from a licensed firearm importer, dealer, or manufacturer may not provide knowingly false *material information* as set forth in Chapter 44.

As to § 922(a)(6), Chapter 44 does not expressly identify what exactly constitutes "material information" bearing on the lawfulness of the "sale or other disposition" of any firearm. §

7

922(a)(6). Despite the lack of an identifiable materiality standard in § 922(a)(6), two specific provisions of Chapter 44, 18 U.S.C. §§ 922(d) and 922(t), impose information or restrictions on firearm transfers with respect to the firearm transferee. In effect, relevant to § 922(a)(6), firearm transferors must obtain certain information as set forth in §§ 922(d) and 922(t) before legally disposing of a firearm to the transferee. Accordingly, § 922(a)(6)'s material lawfulness language relates back to §§ 922(d) and 922(t). Applying those statutes, §§ 922(d) and 922(t), both affect the right to possess a firearm by a person, among other things, subject to indictment and based on controlled substance use.

First, under § 922(d) (emphasis added):

It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile—

(1) *is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year*;

(2) is a fugitive from justice;

(3) is an unlawful user of or addicted to any controlled substance . . . ;

(4) has been adjudicated as a mental defective or has been committed to any mental institution at 16 years of age or older;

(5) who, being an alien—

(A) is illegally or unlawfully in the United States; or

(B) except as provided in subsection (y)(2), has been admitted to the United States under a nonimmigrant visa (as that term is defined in section 101(a)(26) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(26)));

(6) who has been discharged from the Armed Forces under dishonorable conditions;

(7) who, having been a citizen of the United States, has renounced his citizenship;

(8) is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or

8

person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child, except that this paragraph shall only apply to a court order that—

(A) was issued after a hearing of which such person received actual notice, and at which such person had the opportunity to participate; and

(B)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or

(ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury;

(9) has been convicted in any court of a misdemeanor crime of domestic violence;

(10) intends to sell or otherwise dispose of the firearm or ammunition in furtherance of a felony, a Federal crime of terrorism, or a drug trafficking offense (as such terms are defined in section 932(a)); or

(11) *intends to sell or otherwise dispose of the firearm or ammunition to a person described in any of paragraphs (1) through (10).*

Similarly, § 922(t) limits the transfer and receipt of firearms by (emphasis added):

(t)(1) Beginning on the date that is 30 days after the Attorney General notifies licensees under section 103(d) of the Brady Handgun Violence Prevention Act that the national instant criminal background check system is established, a licensed importer, licensed manufacturer, or licensed dealer shall not transfer a firearm to any other person who is not licensed under this chapter, unless—

(A ) before the completion of the transfer, the licensee contacts the national instant criminal background check system established under section 103 of that Act;

(B)(i) the system provides the licensee with a unique identification number; or

(ii) subject to subparagraph (C), 3 *business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that the receipt of a firearm by such other person would violate subsection [18 U.S.C. §§ 922(g) and 922(n)] of this section, or State, local, or Tribal law; and*

(C) in the case of a person less than 21 years of age, in addition to all other requirements of this chapter— (i)the system provides the licensee with a unique identification number;

9

(ii) 3 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d); or

(iii) in the case of such a person with respect to whom the system notifies the licensee in accordance with clause (ii) that cause exists to further investigate a possibly disqualifying juvenile record under subsection (d), 10 business days (meaning a day on which State offices are open) have elapsed since the licensee contacted the system, and the system has not notified the licensee that—

(I) transferring the firearm to the other person would violate subsection [§ 922(d)] of this section; or

(II) *receipt of a firearm by the other person would violate subsection[18 U.S.C. §§ 922(g) and 922(n)] of this section, or State, local, or Tribal law; and*

(D) the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee.

As shown above, § 922(a)(6)'s material fact or information requirements criminally regulate the receipt – the possession – of firearms for certain classes of firearm possessors, including those under indictment and users of controlled substances, including marijuana. Again, *before* a firearm transferee receives and takes possession of a firearm, they, among other things, must have their indictment status verified and vetted and provide information regarding controlled substance use. If the transferee knowingly provides false information regarding the material information, including indictment status and drug use, the transferee's possession is criminalized under § 922(a)(6).

Therefore, the Second Amendment's plain text facially covers and protects the individual conduct at issue here – the regulatory means, process, and potential consequences by which the transferee may obtain, *possess, and receive* a firearm. Since § 922(a)(6) regulates any transferee's firearm possessory interests, the statute facially falls within the Second Amendment's plain text. Stated differently, as the statute imposes an ex ante "*burden[]* [on] activity protected by the Second

Amendment" e.g., the right to keep and bear arms – possession or receipt – it falls within the protective Second Amendment framework. *Holden*, 22-CR-30, ECF No. 32, at p. 10 (emphasis added); *see, e.g.*, *id.* at 6 (reasoning that "[r]eceiving a firearm is necessarily a precursor to keeping or bearing a firearm, so Ms. Holden's conduct is presumptively protected by the Second Amendment."); *see also Quiroz*, 4:22-cr-104-DC, ECF No. 82, at pp. 3-4 (holding that "to keep and bear Arms" includes receiving firearms); *see*, *e.g.*, *United States v. Rahimi*, No. 21-11001 (5th Cir. Feb. 2, 2023) (finding that 18 U.S.C. § 922(g)(8) (firearm possession prohibited on the basis of a domestic restraining order) is facially unconstitutional applying *Bruen*) (quoting *Bruen*, S. Ct. at 2133) (reasoning that Second Amendment protections apply to firearm restrictions that "burden a law-abiding citizen's right to armed self-defense" in the first instance, after which, the *Bruen* analysis then shifts to the history and tradition test).

"The Second Amendment protects the people's right to keep and bear arms. The United States does not dispute that the Second Amendment's plain text covers receiving a firearm-receipt is the condition precedent to keeping and bearing arms. Therefore, the Second Amendment's plain text covers [a person's] receipt of a firearm . . . ." *United States v. Stambaugh*, 5:22-cr-218-PRW, Order ECF No. 58 at p. 6 (W.D. Okla. Nov. 14, 2022) (holding § 922(n) unconstitutional applying *Bruen*). As a result, given that § 922(a)(6) affects and burdens firearm possession, including, among others, the class of possessors under indictment, it falls within the Second Amendment's protective ambit.

    B. *Ms. Scheidt and alleged violators of § 922(a)(6) remain part of "the people" for which the Second Amendment confers protection.*

Ms. Scheidt, and any alleged violator of § 922(a)(6), apply to "The people" the Second Amendment protects. Because the statute affects the possessory firearm rights of those under indictment – those only accused of a criminal act – the statute, though criminal, is subject to Second

Amendment scrutiny under *Bruen*. *See, e.g., id.* at 5 (internal citations omitted) (reasoning that "when the bedrock principle of our system of criminal justice is that those accused of crimes are innocent until proven guilty, it should go without saying that a person indicted for a felony is not a felon. And categorically deeming those indicted for felonies non-law- abiding and dangerous-as the United States urges-is at odds not only with the presumption of innocence, but also with our system of pre-trial detention, where judges are tasked with making individualized determinations of dangerousness. Therefore, as a person who is presumed to be a law-abiding citizen until proven otherwise at trial, [a person under indictment] remains part of the people whom the Second Amendment protects.").

The government has consistently argued in *Bruen* related challenges that criminal defendants are categorically excluded from Second Amendment protection – that they are not part of "the people" as referenced is the Second Amendment. The government is incorrect.

The Second Amendment, along with the First, Second, Fourth, Ninth, and Tenth Amendments, in the Bill of Rights refers to "the people." Within the Constitution, "the people" is a "term of art"—wherever it occurs, "the term unambiguously refers to *all members of the political community, not an unspecified subset*." *Heller*, 554 U.S. at 580-81 (emphasis added); *accord United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) (The term "the people" "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."). The Second Amendment right—no less than the others mentioned above—"belongs to all Americans." *Heller*, 554 U.S. at 581.

As the Fifth Circuit Court of Appeals recently clarified:

To be sure, as the Government argues, *Heller* and *Bruen* also refer to "law-abiding, responsible citizens" in discussing the amendment's reach (*Bruen* adds "ordinary,

law-abiding citizens"). But read in context, the Court's phrasing does not add an implied gloss that constricts the Second Amendment's reach. *Heller* simply uses the phrase "law-abiding, responsible citizens" as shorthand in explaining that its holding (that the amendment codifies an individual right to keep and bear arms) should not "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings . . . ." *Id.* at 626–27; *see also id.* at 627 n.26 ("We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive."). In other words, *Heller's* reference to "law-abiding, responsible" citizens meant to exclude from the Court's discussion groups that have historically been stripped of their Second Amendment rights. *Bruen's* reference to "ordinary, law-abiding" citizens is no different. *See* 142 S. Ct. at 2134.

The Government's reading of *Heller* and *Bruen* also turns the typical way of conceptualizing constitutional rights on its head. "[A] person could be in one day and out the next: the moment he was convicted of a violent crime or suffered the onset of mental illness, his rights would be stripped as a self-executing consequence of his new status." *Kanter [v. Barr]*, 919 F.3d 437, 452 (7th Cir. 2019) (Barrett, J., dissenting). This is "an unusual way of thinking about rights [because [i]n other contexts that involve the loss of a right, the deprivation occurs because of state action, and state action determines the scope of the loss (subject, of course, to any applicable constitutional constraints)." *Id.* "Felon voting rights are a good example: a state can disenfranchise felons, but if it refrains from doing so, their voting rights remain constitutionally protected." *Id.* at 453. The Government fails to justify this disparate treatment of the Second Amendment. Perhaps most importantly, the Government's proffered interpretation lacks any true limiting principle. Under the Government's reading, Congress could remove "unordinary" or "irresponsible" or "non-law abiding" people—however expediently defined— from the scope of the Second Amendment. Could speeders be stripped of their right to keep and bear arms? Political nonconformists? People who do not recycle or drive an electric vehicle? One easily gets the point: Neither *Heller* nor *Bruen* countenances such a malleable scope of the Second Amendment's protections; to the contrary, the Supreme Court has made clear that "the Second Amendment right is exercised individually and belongs to all Americans," *Heller*, 554 U.S. at 581. *Rahimi*, while hardly a model citizen, is nonetheless part of the political community entitled to the Second Amendment's guarantees, all other things equal.

*Rahimi*, No. 21-11001, p. 8-9 (citations in the original).

A district court in *United States v. Harrison*, Case No. CR-22-00328-PRW, Order, ECF

No. 36, n.20, 21 (W.D. Okla. Feb. 3, 2023) (quotations in original) finding that 18 U.S.C. §

922(g)(3) (prohibited firearm possession based on use or addiction to a controlled substance)

(quotations in the original), also recently rejected the government's limited construction of the term "the people" in the Second Amendment:

> On this point, the United States points to *Bruen's* description of the plaintiffs in that case as "ordinary, law-abiding, and adult citizens." *Bruen*, 142 S. Ct. at 2134. But that description can't be read as breaking new ground with respect to who make up "the people" protected by the Second Amendment. First, *Bruen* noted that it was undisputed that the plaintiffs in that case were part of the people protected by the Second Amendment, so at best, the United States is relying on dicta. But even so, the United States is reading too much into the dicta because immediately after describing the plaintiffs, the *Bruen* Court cited *Heller's* holding that "the people" includes "all members of the political community," not just "an unspecified subset." *Id.* (citing *Heller*, 554 U.S. at 580). Thus, this reference in dicta to "law-abiding citizens" cannot possibly be read as overturning the very holding upon which it relies. *See Denezpi v. United States*, 142 S. Ct. 1838, 1847–48 (2022) (explaining that stray statements "[r]ead in isolation . . . . cannot overcome the holdings of our cases, not to mention the text of the Clause"). . . . Frankly, it's not even clear this is carving out a "subset," as much as an outright declaration of the federal government's belief that it can deprive practically anyone of their Second Amendment right. Who among us, after all, isn't a "lawbreaker"? For sure, there may well exist some adult who has never exceeded the speed limit, changed lanes without signaling, or failed to come to a complete stop at a stop sign, but they are few and far between.

Like the defendant in *Rahimi* and *Harrison*, Ms. Scheidt remains part of "the people" the Second Amendment protects. Indeed, no circuit court has adopted the government's flawed and potentially dangerous reasoning that certain members of the body politic are not within "the people" of a constitutionally secured right. *See Range v. Attorney General*, No. 21-2835, Order, ECF No. 69 (3d Cir. 2021 ) (on November 16, 2022, a Third Circuit Court of Appeals panel found the term "the people" in the Second Amendment as not applying to the defendant charged under 18 U.S.C. § 922(g)(1), however, on January 6, 2023, the full Circuit Court vacated the panel opinion: "[a] majority of the active judges having voted for rehearing en banc in the above captioned case, it is ordered that the petition for rehearing is GRANTED. The case will be argued before the en banc court on Wednesday, February 15, 2023 at 10:00 a.m. The opinion and judgment entered November 16, 2022[,] are hereby vacated.").

Like other constitutional provisions, the Second Amendment does not and should not hinge on whether a person is an "*ordinary*, law-abiding, and adult citizen[]." *Bruen*, S. Ct. 142 at 2134 (emphasis added); *see also United States v. Price*, No. 2:22-CR-00097, 2022 WL 6968457, at *7 (S.D.W. Va. Oct. 12, 2022) (analyzing 18 U.S.C. § 922(k)) (defendant part of "the people"); *United States v. Pierre*, No. 1:22-cr-20321-JEM, ECF No. 53 (S.D. Fla. Nov. 28, 2022) (analyzing 18 U.S.C. § 922(g)(1)) (same); *United States v. Hester*, No. 1:22-cr-20333-RNS, ECF No. 39 (S.D. Fla. Jan. 27, 2023) (analyzing § 922(g)(1)) (same); *United States v. Barber*, No. 4:20-CR-384-SDJ, 2023 WL 1073667, at * (E.D. Tex. Jan. 27, 2023) (analyzing§ 922(g)(1)) (same); *United States v. Martin*, No. 2:21-CR-00068, 2023 WL 1767161, at *2 (D. Vt. Feb. 3, 2023)) (analyzing § 922(g)(1)) (same); *United States v. Combs*, No. CR 5:22-136-DCR, 2023 WL 1466614, at *3 (E.D. Ky. Feb. 2, 2023) (analyzing 18 U.S.C. § 922(g)(8)) (same); *United States v. Carbajal-Flores*, No. 20-CR-00613, 2022 WL 17752395, at *3 (N.D. Ill. Dec. 19, 2022) (analyzing 18 U.S.C. § 922(g)(5)) (same). Indeed, the Second Amendment is not "a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *McDonald*, 561 U. S. at 780. 'Ordinary' or not, Ms. Scheidt and alleged violators of § 922(a)(6) are protected by the Second Amendment.

### C. Sections 922(a)(6)'s Regulatory Scope is Inconsistent with the Nation's Firearms History and Tradition.

Section 922(a)(6) potentially criminalizes possession and receipt of a firearm through imposing information requirements regarding and addressing among other things, first and foremost, the firearm possessor's indictment status (the same as § 922(n), found unconstitutional in *Holden*); conviction status (the same as 18 U.S.C. § 922(g)(1) (felonies convictions)); specified misdemeanor convictions (the same as 18 U.S.C. § 922(g)(9)); controlled substance addiction or use (the same as § 922(g)(3)); mental health adjudications (the same as 18 U.S.C. § 922(g)(4));

fugitive status (the same as 18 U.S.C. § 922(g)(2)); military discharge status (the same as 18 U.S.C. § 922(g)(6)); and alienage and citizenship status (the same as 18 U.S.C. §§ 922(g)(5) and (g)(7)).

At this second step of the *Bruen* analysis, the government will not be able to proffer evidence showing a national firearm history and tradition from the time of the founding supporting § 922(a)(6)'s restrictions on firearm possession and receipt. Indeed, Judge Miller has already found that firearm possessory restrictions or burdens based on nothing more than a filed indictment, *see* § 922(n), fail the constitutional history and tradition scrutiny test set forth in *Bruen*. *See, e.g., Holden*, 22-CR-30, ECF No. 32, at p. 10 (internal citations omitted) (holding that "Section 922(n) burdens activity protected by the Second Amendment, and the government hasn't shown that the regulation is consistent with the history and tradition of firearm regulation that delimits the outer bounds of the right to keep and bear arms. Under the new Second Amendment standard, § 922(n) is unconstitutional."); *see also e.g.*, *Quiroz*, 4:22-cr-104-DC, ECF No. 82, at p. 25 (holding that the "Second Amendment is not a second class right. No longer can courts balance away a constitutional right. After *Bruen*, the Government must prove that laws regulating conduct covered by the Second Amendment's plain text align with this Nation's historical tradition. The Government does not meet that burden. Although not exhaustive, the Court's historical survey finds little evidence that § 922(n)—which prohibits those under felony indictment from obtaining a firearm—aligns with this Nation's historical tradition. As a result, this Court holds that § 922(n) is unconstitutional.").

Moreover, § 922(a)(6) facially implicates the firearm possession rights of marijuana users, similar to § 922(g)(3). In effect, the statute's pre-possession information requirements and restrictions amount to a total criminal prohibition or ban on firearm possession by users of marijuana, even in their home, for any purpose of the use, including for self-defense. Such a broad

ban and total criminal prohibition on firearm possession for users of an intoxicant is not analogous to any founding period firearm restriction. *See*, *e.g.*, *Harrison*, Case No. CR-22-00328-PRW, Order, ECF No. 36, p. 16 (distinguishing: "the seven laws the United States identifies [as historical analogues] took a scalpel to the right of armed self-defense—narrowly carving out exceptions but leaving most of the right in place—§ 922(g)(3) (loss of the right to possess a firearm based on controlled substance use) takes a sledgehammer to the right. Recall that § 922(g)(3) imposes the most severe burden possible: a total prohibition on possessing any firearm, in any place, for any use, in any circumstance—regardless of whether the person is actually intoxicated or under the influence of a controlled substance. It is a complete deprivation of the core right to possess a firearm for self-defense, turning entirely on the fact that an individual is a user of marijuana. Section 922(g)(3)'s burden on the right of armed self-defense is thus not comparable to the seven historical intoxication laws."

In fact, firearm possession and use of intoxicants has persisted since the 18th century, without a corresponding historical total restriction and ban on firearm possession based on substance use as imposed under 922(a)(6)'s materiality and information restrictions. *See United States v. Harris*, No. 21-3031, Reply Brief, ECF No. 43 at pp. 8-9 (3d Cir. 2021). In *Harris*, "the government acknowledge[d] that no similar provision to § 922(g)(3)'s prohibition on firearm possession by an unlawful user of any controlled substance or addict existed at the time of ratification." No. 21-3031, Reply Brief, ECF No. 43 at p. 9 (3d Cir. 2021). "The lack of a distinctly similar historical regulation prohibiting users of intoxicants from possessing firearms establishes that § 922(g)(3) is inconsistent with the Second Amendment." *Id.* That intoxicant use has been extant since the founding without a corresponding criminal prohibition on firearm possession for intoxicant users or addicts demonstrates that 922(a)(6) and the materiality and informational

restrictions imposed on firearm possession are without historical tradition.

In addition, applying Form 4473 and the Attorney General's standard of "user" 922(a)(6)'s deprivation of firearm possessory rights based on marijuana use are even more untenable:

> The United States suggests that § 922(g)(3) imposes a narrow burden on the right to possess a firearm because it does not permanently deprive the marijuana user of the right. Rather, a person may regain their right to possess a firearm by stopping their use of marijuana. But while theoretically impermanent, the deprivation imposed by § 922(g)(3) is significantly greater than the historical intoxication laws because even if one stops their use of a controlled substance, they could be deprived of their right to armed self-defense for up to a year after their last use. *See* 27 C.F.R. § 478.11 ("An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year."). The deprivation imposed by the historical intoxication laws, on the other hand, ceased the moment the person sobered up.

*Harrison*, Case No. CR-22-00328-PRW, Order, ECF No. 36, p. 16-17, n.40. Here, by contrast, the concept of intoxicant or marijuana use under the C.F.R. goes far beyond terminating at the point of sobriety, but rather, affords the government tremendous and ahistorical power to criminalize and interfere with firearm possession for any purpose. At bottom, 922(a)(6)'s materiality and information requirements extending to a vague use concept are not a *"reasonable, well-defined restriction[]."* *Bruen,* S. Ct. at 2156.

The Second Amendment secures rights that are "enshrined within the scope they were understood to have when the people adopted them." *Id.* at 2136. Fatally, here the government, carrying its burden under *Bruen*, will be unable to proffer evidence showing that in 1791, firearm possession could be restricted on the front-end and criminalized based on material fact and information requirements, including representations regarding indictment status and an undefinable framework of drug use, as a condition precedent for exercising the Second Amendment protected act of firearm possession.

App. 33

## II.    Section 922(a)(6) is Unconstitutionally Applied.

Applying the facts alleged in the indictment also violate Ms. Scheidt's Second Amendment rights. Through Form 4473, Ms. Scheidt's firearm possession here was conditioned on her providing information regarding indictment status and whether she is a user or addict of a controlled substance, among other things. Indeed, Ms. Scheidt's prosecution is based on her completion of Form 4473, which itself conditioned her firearm possession on providing constitutionally protected information regarding indictment status and drug use. *See* Ex. A.

As applied, Ms. Scheidt's disarmament is inconsistent with the text and history of the Second Amendment. Specifically, the government cannot demonstrate that her sole marijuana use is a historical and traditional basis to criminally invade her pre-existing Second Amendment right to firearm possession.

Again, marijuana possession – logically essential to use – is subject to a presidential pardon for the period covering Ms. Scheidt's alleged marijuana use in counts 1-5.  A presidential "pardon not merely releases the offender from the punishment prescribed for the offence, but that it obliterates in legal contemplation the offence itself." *Carlisle v. United States*, 83 U.S. 147, 151 (1872); *see also Murphy v. Ford*, 390 F. Supp. 1372, 1374 (W.D. Mich. Mar. 28, 1975) (citing *Ex Parte Garland*, 71 U.S. 333, 334 (1867) (holding that when a defendant "had been neither indicted nor convicted of an offense against the United States does not affect the validity of the pardon.")). Simply, as applied, the government is attempting to criminalize Ms. Scheidt's marijuana possession, for which punishment and the concomitant loss of civil rights flowing from a conviction have been absolved through the pardon. The government surely will not be able to offer a historically analogous criminal regulation proscribing firearm possession based on using a

App. 34

substance at a time in which the sitting president through his pardon power proclaimed is no longer punishable conduct.

Fundamentally, as applied to Ms. Scheidt, § 922(a)(6) is not a well-defined firearm restriction. Here, the government is attempting to criminalize Ms. Scheidt's firearm possession based on her status as an unlawful user of marijuana, when use of marijuana during the relevant period is no longer "unlawful."

Plainly, Form 4473 includes impermissible criteria restricting firearm possession. As applied here, Ms. Scheidt has been prosecuted based on her response to a form that does not conform to the Second Amendment and should not be used as a means to restrict firearm possession. Even assuming Ms. Scheidt provided inaccurate information on Form 4473, because Form 4473 itself violates the Second Amendment, this Court should dismiss the indictment against Ms. Scheidt.

### III.    The Indictment Fails to State an Offense.

Again, the core of this prosecution is Ms. Scheidt's alleged misrepresentations and omissions in completing Form 4473. In counts 1-5, Ms. Scheidt is alleged to have misrepresented her marijuana use and misrepresented her current address.

The authority for the creation of Form 4473, appears to be derived from 18 U.S.C. § 923(g)(1), which provides that the Attorney General may prescribe rules or regulations regarding the required information firearm manufactures, dealers, or importers must maintain from firearm transferees. [1] Form 4473's deficiency is that it expands criminal liability beyond the statutory

---

[1] Form 4473 is based on a statute, § 923(g)(1), which itself grants the Attorney General substantial and nearly unfettered discretion to create unguided and unintelligible regulations and corresponding forms with resulting criminal consequences inconsistent with the Second Amendment's historical maxims. As a result, Form 4473 is based on an underlying statute, § 923(g)(1), which violates the Supreme Court's non-delegation doctrine and provides an additional basis for this Court to grant Ms. Scheidt's motion to dismiss. *See Panama Refining Co. v. Ryan*, 293 U.S. 388 (1935).

information or materiality requirements regarding transferees contained in the Firearm Chapter. For example, Ms. Scheidt is alleged to be a user of marijuana and her use is material. However, Form 4473, based on an imported C.F.R. defines "user" far more broadly than any common-sense or corresponding statutory standard of use. In effect, what the firearm chapter defines as material is expanded substantially through Form 4473.

In addition, Ms. Scheidt allegedly provided a non-current residential address, however, that information is not material transferee information under Chapter 44. The portions of Chapter 44, which require information regarding "a place of residence" deal primarily with the records of the transferor, 18 U.S.C. § 922(b)(5), however, the material information related to the means of identification of the buyer or transferee are contained in § 922(t) – a provision related to firearm background checks. Applying § 922(t), a firearm transferor need only review the transferee's valid identification, which need not list the transferee's current place of residence to function as a valid identification. *See* § 922(t)(1)(D) ("the transferor has verified the identity of the transferee by examining a valid identification document (as defined in section 1028(d) of this title) of the transferee containing a photograph of the transferee."). Section 1028(d), in turn, does not define identification to mean exclusively a current place of residence. *See, e.g.*, 18 U.S.C. § 1028(d) (stating that the term "false authentication feature means an authentication feature that— (A) is genuine in origin, but, without the authorization of the issuing authority, has been tampered with or altered for purposes of deceit; (B) is genuine, but has been distributed, or is intended for distribution, without the authorization of the issuing authority and not in connection with a lawfully made identification document, document-making implement, or means of identification to which such authentication feature is intended to be affixed or embedded by the respective issuing authority; or (C) appears to be genuine, but is not."). Though Form 4473 may require current place

of residence from the transferee, because Chapter 44 does not list that as a transferee requirement or as a necessary condition precedent for firearm possession, counts 1-5, here also fail to state an offense under § 922(a)(6) and must be dismissed under Rule 12(b)(3). Again, whether Ms. Scheidt violated Form 4473 is not controlling as to whether the applicable statute was violated.[2]

Finally, that counts 1-5 involve marijuana use, a matter subject of a presidential pardon, further supports dismissal at this juncture. Like *Holden*, and indictment status, Ms. Scheidt's alleged misrepresentation regarding marijuana use is no longer "material" to whether she may possess a firearm as her use of marijuana no longer renders her an unlawful user of a controlled substance during the periods alleged in the indictment.

<u>Conclusion</u>

Ms. Scheidt respectfully requests that this Court grant her motion to dismiss. Section 922(a)(6) facially and as applied violates the Second Amendment under the *Bruen* analytical framework. The statute criminalizes firearm possession, imposes a burden on firearm possession based on impermissible information criteria including indictment status and an unworkable and unknowable concept of marijuana use, and as such, is inconsistent with the nation's historical tradition of firearm regulation. Finally, the indictment as alleged fails to state an offense, and the indictment should be dismissed as to counts 1-5.

*Date*: <u>February 10, 2023</u>

Respectfully submitted,

Northern District of Indiana
Federal Community Defenders, Inc.

---

[2] As to address materiality applying Form 4473, Ms. Scheidt acknowledges *United States v. Queen*, 408 F.3d 337 (7th Cir. 2005), however, that case is distinguishable in that the Court there analyzed only Form 4473 and not the broader transferee materiality requirements under § 922(a)(6).

By:   s/ Michelle F. Kraus
      Michelle F. Kraus
      200 East Main Street
      Ft. Wayne, Indiana 46802
      Phone: (260) 422-9940
      Email: Michelle_Kraus@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that, on February 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all parties of record.

   s/ Michelle Kraus

App. 38

U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms and Explosives

OMB No. 1140-0020

**Firearms Transaction Record**

| | Transferor's/Seller's Transaction Serial Number (if any) |
| --- | --- |
| | 6556 |

**WARNING:** The information you provide will be used to determine whether you are prohibited by Federal or State law from receiving a firearm. Certain violations of the Gun Control Act, 18 U.S.C. 921 et. seq., are punishable by up to 10 years imprisonment and/or up to 20 years imprisonment. Any person who exports a firearm without a proper authorization from either the Department of Commerce or the Department of State, as applicable, is subject to a fine of not more than $1,000,000 and up to 20 years imprisonment.

Read the Notices, Instructions, and Definitions on this form. Prepare in original only at the licensed premises (including business temporarily conducted from a qualifying gun show or event in the same State in which the premises is located) unless the transaction qualifies under 18 U.S.C. 922(c). All entries must be handwritten in ink unless completed under ATF Rul. 2016-2. PLEASE PRINT.

**Section A - Must Be Completed By Transferor/Seller Before Transferee/Buyer Completes Section B**

| 1. Manufacturer and Importer (if any) (If the manufacturer and importer are different, include both.) | 2. Model (if designated) | 3. Serial Number | 4. Type | 5. Caliber or Gauge |
| --- | --- | --- | --- | --- |
| 1. HI Point / Strassels | C9 | P10,37 804 | pistol | 9mm |
| 2. | | | | |
| 3. | | | | |

| 6. Total Number of Firearms to be Transferred (Please spell total number e.g., one, two, etc. Do not use numerals.) ONE | 7. Check if any part of this transaction is a pawn redemption. Record Line Number(s) From Question 1: ☐ |
| --- | --- |
| | 8. Check if this transaction is to facilitate a private party transfer. ☐ |

**Section B - Must Be Completed Personally By Transferee/Buyer**

9. Transferee's/Buyer's Full Name (If legal name contains an initial only, record the initial followed by "IO" in quotes. If no middle initial or name, record "NMN".)

| Last Name (including suffix, e.g., Jr, Sr, II, III) Scheidt | First Name Echo | Middle Name Adelle |
| --- | --- | --- |

10. Current State of Residence and Address (U.S. postal abbreviations are acceptable. Cannot be a post office box.)

| Number and Street Address W Ewold Ave | City Marion | State IN | ZIP Code 46952 | County/Parish/Borough Grant |
| --- | --- | --- | --- | --- |

| 11. Place of Birth | | 12. Height | 13. Weight (lbs.) | 14. Sex | 15. Birth Date | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| U.S. City and State Marion IN | -OR- Foreign Country | Ft. 5 In. 6 | 248 | ☐ Male ☑ Female ☐ Non-Binary | Month | Day | Year |

| 16. Social Security Number (optional, but will help prevent misidentification): | 17. Unique Personal Identification Number (UPIN) or Appeals Management Database Identification (AMD ID) (if applicable) |
| --- | --- |

18.a. Ethnicity

☐ Hispanic or Latino
☑ Not Hispanic or Latino

18b. Race (Select one or more race in 18.b. Both 18.a. and 18.b. must be answered.)

☐ American Indian or Alaska Native
☐ Asian
☐ Black or African American
☐ Native Hawaiian or Other Pacific Islander
☑ White

19. Country of Citizenship: (Check/List more than one, if applicable. Nationals of the United States may check U.S.A.)

☑ United States of America (U.S.A) ☐ Other Country/Countries (Specify):

20. If you are an alien, record your U.S.-issued alien or admission number (AR#, USCIS#, or I94#):

21. Answer the following questions by checking or marking either the "yes" or "no" box to the right of the questions:

| | | Yes | No |
| --- | --- | --- | --- |
| a. | Are you the actual transferee/buyer of the firearm(s) listed on this form and any continuation sheet(s) (ATF Form 5300.9A)? **Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you.** Exception: If you are only picking up a repaired firearm(s) for another person, you are not required to answer 21.a. and may proceed to question 21.b. | ☑ | ☐ |
| b. | Are you under indictment or information in any court for a felony, or any other crime for which the judge could imprison you for more than one year, or are you a current member of the military who has been charged with violation(s) of the Uniform Code of Military Justice and whose charge(s) have been referred to a general court-martial? | ☐ | ☑ |
| c. | Have you ever been convicted in any court, including a military court, of a felony, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? | ☐ | ☑ |
| d. | Are you a fugitive from justice? | ☐ | ☑ |
| e. | Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance? **Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside. | ☐ | ☑ |

Previous Editions Are Obsolete

Page 1 of 6

**STAPLE IF PAGES BECOME SEPARATED**

ATF Form 4473 (5300.9)
Revised May 2020

App. 39

**00000024**

|  | Yes |  |
|---|---|---|
| f. Have you ever been adjudicated as a mental defective OR have you ever been committed to a mental institution? | ☐ | ☐ |
| g. Have you ever been discharged from the Armed Forces under dishonorable conditions? | ☐ | ☐ |
| h. Are you subject to a court order, including a Military Protection Order issued by a military judge or magistrate, restraining you from harassing, stalking, or threatening your child or an intimate partner or child of such partner? | ☐ | ☐ |
| i. Have you ever been convicted in any court of a misdemeanor crime of domestic violence, or are you or have you ever been a member of the military and been convicted of a crime that included, as an element, the use of force against a person as identified in the instructions? | ☐ | ☐ |
| j. Have you ever renounced your United States citizenship? | ☐ | ☐ |
| k. Are you an alien illegally or unlawfully in the United States? | ☐ | ☐ |
| 21.l.1. Are you an alien who has been admitted to the United States under a nonimmigrant visa? | ☐ | ☐ |
| 21.l.2. If you are such an alien do you fall within any of the exceptions stated in the instructions? (U.S. citizens/nationals leave 21.l.2. blank) | ☐ | ☐ |

I certify that my answers in Section B are true, correct, and complete. I have read and understand the Notices, Instructions, and Definitions on ATF Form 4473. I understand that answering "yes" to question 21.a. if I am not the actual transferee/buyer is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I understand that a person who answers "yes" to any of the questions 21.b. through 21.k. is prohibited from receiving or possessing a firearm. I understand that a person who answers "yes" to question 21.l.1. is prohibited from receiving or possessing a firearm unless the person answers "yes" to question 21.l.2. and provides the documentation required in 26.d. I also understand that making any false oral or written statement, or exhibiting any false or misrepresented identification with respect to this transaction, is a crime punishable as a felony under Federal law, and may also violate State and/or local law. I further understand that the repetitive purchase of firearms for the purpose of resale for livelihood and profit without a Federal firearms license is a violation of Federal law.

| 22. Transferee's/Buyer's Signature | 23. Certification Date |  |  |
|---|---|---|---|
|  | Month 04 | Day 5 | Year 2022 |

**Section C - Must Be Completed By Transferor/Seller Prior To The Transfer Of The Firearm(s)**

| 24. Category of firearm(s) to be transferred (check or mark all that apply): | 25. If sale or transfer is at a qualifying gun show or event: |
|---|---|
| ☑ Handgun ☐ Long Gun ☐ Other Firearm (frame, receiver, etc.) (rifle or shotgun) | Name of Function: |
|  | City, State: |

26.a. Identification (e.g., Virginia driver's license (VA DL) or other valid government-issued photo identification including military ID.)

| Issuing Authority and Type of Identification | Number on Identification | Expiration Date of Identification (if any) |  |  |
|---|---|---|---|---|
|  |  | Month | Day | Year |
| INDL |  | 08 | 20 | 2023 |

26.b. Supplemental Government Issued Documentation (if identification document does not show current residence address or full legal name)

26.c. Official Military Orders Establishing Permanent Change of Station (PCS):

| PCS Base/City and State: | PCS Effective Date: | PCS Order Number (if any): |
|---|---|---|

26.d. Exception to the Nonimmigrant Alien Prohibition: If the transferee/buyer answered "yes" to 21.l.2. record the type of documentation showing the exception to the prohibition and attach a copy to this ATF Form 4473)

| 27.a. Date the transferee's/buyer's identifying information in Section B was transmitted to NICS or the appropriate State agency. | 27.b. The NICS or State transaction number (if provided) was: |
|---|---|
| Month 04 Day 05 Year 2022 | 102FKOBDT |

| 27.c. The response initially provided by NICS or the appropriate State agency was: | 27.d. Prior to transfer the following response(s) was/were later provided by NICS or the appropriate State agency: |
|---|---|
| ☑ Proceed ☐ Delayed [The firearm(s) may be transferred on ____ if State law permits (optional)] ☐ Denied ☐ Cancelled | Proceed ____ (date)   ☐ Overturned Denied ____ (date) Cancelled ____ (date) ☐ No response was provided within 3 business days. |

27.e. After the firearm was transferred, the following response was provided by NICS or the appropriate State agency (if applicable) on:

____ (date)    ☐ Proceed    ☐ Denied    ☐ Cancelled

| 27.f. Name and Brady identification number of the NICS examiner. (optional) | 27.g. Name of FFL Employee Completing NICS check. (optional) |
|---|---|
| (name) ____ (number) ____ |  |

28. ☐ No NICS check is required because a background check was completed during the NFA approval process on the individual who will receive the NFA firearm(s), as reflected on the approved NFA application.

29. ☐ No NICS check is required because the transferee/buyer has a valid permit from the State where the transfer is to take place, which qualifies as an exemption to NICS.

| Issuing State and Permit Type | Date of Issuance (if any) | Expiration Date (if any) | Permit Number (if any) |
|---|---|---|---|
| | | | |

### Section D - Must Be Completed Personally By Transferee/Buyer

If the transfer of the firearm(s) takes place on a different day from the date that the transferee/buyer signed Section B, the transferee/buyer must complete Section D immediately prior to the transfer of the firearm(s).

I certify that all of my responses in Section B of this form are still true, correct, and complete.

| 30. Transferee's/Buyer's Signature | 31. Recertification Date | | |
|---|---|---|---|
| | Month | Day | Year |

### Section E - Must Be Completed By Transferor/Seller

| 32. For Use by Licensee | 33. Trade/corporate name and address of transferor/seller and Federal Firearm License Number (must contain at least first three and last five digits X-XX-XXXXX; hand stamp may be used) |
|---|---|
| 9449 | In-Laws & Outlaws Gun Shop<br>8070 E. 500 S.<br>Gas City, IN 46933<br><br>**4-35-08752** |

The Individual Transferring The Firearm(s) Must Complete Questions 34-36.
For Denied/Cancelled Transactions, The Individual Who Completed Section C Must Complete Questions 34-36.

I certify that: (1) I have read and understand the Notices, Instructions, and Definitions on this ATF Form 4473; (2) the information recorded in Sections A, C and E is true, correct, and complete; and (3) this entire transaction record has been completed at the licensed business premises ("licensed premises" includes business temporarily conducted from a qualifying gun show or event in the same State in which the licensed premises is located) unless this transaction has met the requirements of 18 U.S.C. 922(c). Unless this transaction has been denied or cancelled by NICS or State agency, I further certify on the basis of—(1) the transferee's/buyer's responses in Section B (and Section D, if applicable); (2) the verification of the identification recorded in question 26 (and the re-verification at the time of transfer, if Section D was completed); and (3) State or local law applicable to the firearms business — it is my belief that it is not unlawful for me to sell, deliver, transport, or otherwise dispose of the firearm(s) listed on this form to the person identified in Section B.

| 34. Transferor's/Seller's Name (please print) | 35. Transferor's/Seller's Signature | 36. Date Transferred | | |
|---|---|---|---|---|
| Jason Cline | Jan Cli | Month | Day | Year |
| | | 04 | 05 | 20** |

REMINDER - By the Close of Business Complete ATF Form 3310.4 for Multiple Sales of Handguns Within 5 Consecutive Business Days

### NOTICES, INSTRUCTIONS, AND DEFINITIONS

**Purpose of the Form:** The information and certification on this Form are designed so that a person licensed under 18 U.S.C. 923 may determine if he/she may lawfully sell or deliver a firearm to the person identified in Section B, and to alert the transferee/buyer of certain restrictions on the receipt and possession of firearms. The transferor/seller of a firearm must determine the lawfulness of the transaction and maintain proper records of the transaction. Consequently, the transferor/seller must be familiar with the provisions of 18 U.S.C. 921-931 and the regulations in 27 CFR Parts 478 and 479. In determining the lawfulness of the sale or delivery of a rifle or shotgun to a resident of another State, the transferor/seller is presumed to know the applicable State laws and published ordinances in both the transferor's/seller's State and the transferee's/buyer's State. (See State Laws and Published Ordinances -Firearms (ATF Electronic Publication 5300.5) on https://www.atf.gov/.)

Generally, ATF Form 4473 must be completed at the licensed business premises when a firearm is transferred over-the-counter. Federal law, 18 U.S.C. 922(c), allows a licensed importer, manufacturer, or dealer to sell a firearm to a nonlicensee who does not appear in person at the licensee's business premises only if the transferee/buyer meets certain requirements. These requirements are set forth in section 922(c). 27 CFR 478.96(b), and ATF Procedure 2013-2 (or subsequent update).

After the transferor/seller has completed the firearms transaction, he/she must make the completed, original ATF Form 4473 (which includes the Notices, General Instructions, and Definitions), and any supporting documents, part of his/her permanent records. Such Forms 4473 must be retained for at least 20 years and after that period may be submitted to ATF. Filing may be chronological (by date of disposition), alphabetical (by name of purchaser), or numerical (by transaction serial number), as long as all of the transferor's/seller's completed Forms 4473 are filed in the same manner.

FORMS 4473 FOR DENIED/CANCELLED TRANSFERS MUST BE RETAINED: If the transfer of a firearm is denied/cancelled by NICS, or if for any other reason the transfer is not completed after a NICS check is initiated, the licensee must retain the ATF Form 4473 in his/her records for at least 5 years. Forms 4473 with respect to which a sale, delivery, or transfer did not take place shall be separately retained in alphabetical (by name of transferee) or chronological (by date of transferee's certification) order.

If the transferor/seller or the transferee/buyer discovers that an ATF Form 4473 is incomplete or improperly completed after the firearm has been transferred, and the transferor/seller or the transferee/buyer wishes to correct the omission(s) or error(s), photocopy the inaccurate form and make any necessary additions or revisions to the photocopy. The transferor/seller should only make changes to Sections A, C, and E. The transferee/buyer should only make changes to Sections B and D. Whoever made the changes should initial and date the changes. The corrected photocopy should be attached to the original Form 4473 and retained as part of the transferor's/seller's permanent records.

#### Section A

**Questions 1-6. Firearm(s) Description:** These blocks must be completed with the firearm(s) information. All firearms manufactured after 1968 by Federal firearms licensees should be marked with a serial number. Should you acquire a firearm that is legally not marked with a serial number (i.e. pre-1968), you may answer question 3 with "NSN" (No Serial Number), "N/A" or "None."

If more than three firearms are involved in a transaction, please provide the information required by Section A, Questions 1-5, on ATF Form 5300.9A, Firearms Transaction Record Continuation Sheet. The completed Form 5300.9A must be attached to this ATF Form 4473.

**STAPLE IF PAGES BECOME SEPARATED**

ATF Form 4473 (5300.9)
Revised May 2020

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## FORT WAYNE DIVISION

UNITED STATES OF AMERICA      )
         )
v.                           )       Cause No. 1:22-CR-49-HAB
         )
ECHO A. SCHEIDT            )

### OPINION AND ORDER

A six-count Indictment alleges that between February 2022 and April 2022, the Defendant knowingly made false statements on a federal form to acquire firearms. She is charged with five violations of 18 U.S.C. §§922(a)(6) and 924(a)(2). Count 6 asserts the Defendant made materially false, fictitious, and fraudulent statements to ATF agents violating 18 U.S.C. §1001(a).[1] Defendant now moves to dismiss Counts 1-5 of the indictment, arguing that the statute is unconstitutional under *N.Y. Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022), and Judge Miller's opinion in *United States v. Holden*, --- F.3d ---, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022). (ECF No. 21). Because the Court finds that the conduct prohibited by § 922(a)(6) is not covered by the plain text of the Second Amendment, there is no need to conduct a full *Bruen* analysis. The statute is constitutional, and the motion to dismiss will be denied.[2]

### I.     Factual Background

The indictment alleges that, five times, Defendant knowingly made false and fictitious statements about a fact material to the lawfulness of the sale of a firearm to two different firearm purveyors, In-laws & Outlaws Gun Shop and Trading Post, LLC, in connection with the

---

[1] Defendant does not challenge Count 6 in her Motion to Dismiss.

[2] Because the issues raised by *Bruen* have become a hotbed issue in criminal prosecutions for violating 18 U.S.C. §922, the parties, post-briefing, have provided the Court with notices of supplemental authority reflecting decisions in other courts related to these issues. (ECF Nos. 27–29). The Court has reviewed those authorities together with the briefing submitted.

acquisition and attempted acquisition of a firearm. Each time, Defendant completed ATF Form 4473, representing that she resided at 1327 Euclid Avenue and denying that she was an unlawful user of marijuana. The indictment alleges that these answers were false and therefore violated § 922(a)(6).

## II.    Legal Analysis

In *Bruen*, the Supreme Court announced a new test for judging the constitutionality of firearm regulations. The Supreme Court rejected the two-step analysis that had emerged following *District of Colombia v. Heller*, 554 U.S. 570 (2008), calling it "one step too many." *Bruen*, 142 S. Ct. at 2127. Instead, the Supreme Court announced the following standard for applying the Second Amendment:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id*. at 2129–30 (quotations omitted).

The Supreme Court spent very little time in *Bruen* explaining how to assess whether the Second Amendment's plain text covers an individual's conduct. This, presumably, is because that determination is usually straightforward. Not so, here.

The statute here provides:

(a)  It shall be unlawful –

…

(6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with

respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter;

\* \* \* \*

18 U.S.C. § 922(a)(6). The penalties for a violation of this statute are found in 18 U.S.C. §924(a)(2): "Whoever knowingly violates subsection (a)(6)… section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."

Defendant argues largely that § 922(a)(6) infringes on the Defendant's Second Amendment right to keep and bear arms. Stated another way, because the false statements criminalized by § 922(a)(6) conditions firearm possession on impermissible criteria, such as marijuana use, it must fall within the scope of the Second Amendment. The Court cannot agree.

*Holden* reveals the flaw in Defendant's logic. In *Holden*, Judge Miller dismissed an indictment under 18 U.S.C. § 922(a)(6). But relevant here, it was not because he found § 922(a)(6), which criminalizes making false or fictitious statements of material fact in connection with the acquisition of a firearm or ammunition, unconstitutional. Rather, Judge Miller concluded that the statute requiring the allegedly false information, 18 U.S.C. § 922(n), was unconstitutional. *Holden*, 2022 WL 17103509, at \*5. Because the information required in the unconstitutional § 922(n) was "immaterial" for the purposes of § 922(a)(6), *Holden*, 2022 WL 17103509, at \*7, Judge Miller held that the indictment in that case did not state an offense. *Id.*

The proper way to attack an indictment under § 922(a)(6) under *Holden* is not an attack on the statute itself, as Defendant attempts here. Instead, *Holden* teaches that the attack must be on the requirement for the allegedly false information; indictment status in *Holden*, user or addict of a controlled substance, here. See 18 U.S.C. §922(g)(3) (making it unlawful for any person who is an unlawful user of or addicted to any controlled substance under the Controlled Substance Act to possess a firearm); 18 U.S.C. §922(d)(3) (prohibiting sale or other disposition of a firearm to

unlawful users or persons addicted to any controlled substance). But Defendant has not directly asserted that laws prohibiting a user or addict of controlled substances from possessing or receiving a firearm are unconstitutional – and for good reason, *United States v. Posey*, 2023 WL 1869095 (N.D. Ind. February 9, 2023) (denying as applied and facial *Bruen* challenge to §922(g)(3)); *United States v. Seiwert*, 2022 WL 4534605, *2 (N.D. Ill. Sept. 28, 2022) (upholding *Bruen* challenge to 18 U.S.C. § 922(g)(3)).[3] Simply put, the reasoning in these cases doom any attempt made by Defendant to immunize her conduct or challenge the lawfulness of §922(d)(3) or (g)(3).

Nevertheless, in her supplemental authority, Defendant submitted *United States v. Connelly,* ___ F. Supp.3d___, 2023 WL 2806324 (W.D. Texas, April 6, 2023), in which a district court in Texas dismissed an indictment raising counts under §922(d)(3) and (g)(3) on *Bruen* grounds. While *Connelly* perhaps supports an attack on those statutes, *contra Posey,* 2023 WL 1869095 and *Seiwert*, 2022 WL 4534605, the Court reiterates that the Defendant here was not charged under either of those statutes. She was charged under §922(a)(6) for lying on a federal firearms acquisition form. Thus, the problem for Defendant, is that these truthful information statutes, are not firearms statutes. They are, instead, perjury statutes. As correctly stated by Judge Simon, Defendant "isn't being prosecuted for possessing a firearm, [s]he's being prosecuted for *lying* in the acquisition of the firearm." *United States v. Campbell*, Cause No. 2:22-CR-23-PPS, DKT No. 31 at 8 (original emphasis). Defendant's right to bear arms is not addressed, much less

---

[3] Although Defendant is not charged under either §922(g)(3) or §922(d)(3), she argues, like the defendant in *Posey,* that the presidential pardon of all individuals who committed the offense of simple possession of marijuana has relevance to the analysis. *Posey,* 2023 WL 1869095 *3-4; see Granting Pardon for the Offense of Simple Possession of Marijuana, 87 Fed. Reg. 61441 (Oct. 12, 2022) (Pardon issued on October 6, 2022, and published in Federal Register on October 12). In *Posey*, the Defendant asserted that the pardon had the effect of making her no longer an unlawful user of a controlled substance under §922(g)(3). *Posey* soundly rejected this argument finding that the pardon is limited to simple possession offenses under 21 U.S.C §844 and that it did not legalize marijuana use under federal law.

infringed, by § 922(a)(6), so the statute cannot be unconstitutional under *Bruen*.[4] Accord *Valentine,* 2023 WL 2571720 *7 ("Section 922(a)(6) does not create a substantive restriction on who may possess a firearm….[T]he conduct which this section regulates is lying to the federal government about material facts during the course of firearms transactions."); *United States v. Soto*, 2023 WL 1087886, *5 (W.D. Tex. Jan. 27, 2023); *United States v. Combs*, 2023 WL 2144150, *2 (E.D. Ky. Feb. 21, 2023); *United States v. Gonzalez*, 2022 WL 17583769, *1 (D. Ut. Dec. 12, 2022); *United States v. Tilotta*, 2022 WL 3924282, *5 (S.D. Cal. Aug. 30, 2022). These cases confirm that §922(a)(6) only prohibits making false statements which, by itself, does not implicate conduct protected by the Second Amendment. The Motion to Dismiss is therefore, DENIED.

## III.    Conclusion

For these reasons, Defendant's Motion to Dismiss the Indictment (ECF No. 21) is DENIED.

SO ORDERED on April 10, 2023.

s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

---

[4] Even if the Defendant successfully attacked the underlying statute that criminalizes users and addicts from possessing firearms, she still must overcome the problem that *United States v. Queen,* 408 F.3d 337,339 (7th Cir. 2005) holds that lying about a street address on an ATF Form 4473 is a material misrepresentation that violates § 922(a)(6). See also, *United States v. Valentine*, 2023 WL 2571720 (N.D. Ind. March 20, 2023).