No. 23-2567

**UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

**UNITED STATES OF AMERICA,**
      **Plaintiff-Appellee,**

    **v.**

**ECHO A. SCHEIDT**
      **Defendant-Appellant**

Appeal from the United States District Court
for the Northern District of Indiana
Case No.  1:22-CR-49
The Honorable Chief Judge Holly Brady

**REPLY BRIEF OF
DEFENDANT-APPELLANT ECHO A. SCHEIDT**

Northern District of Indiana
Federal Community Defenders, Inc.
Chad J. Pennington
Attorney for Defendant-Appellant
Echo A. Scheidt

200 E. Main Street, Suite 905
Fort Wayne, IN 46802
Phone: (260) 422-9940
Fax: (260) 422-9954
Email: Chad_Pennington@fd.org

**Oral Argument Requested**

Save As       Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: __23-2567__

Short Caption: __United States v. Echo A. Scheidt__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]     **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Echo A. Scheidt

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Chad J. Pennington, Federal Community Defenders, Inc. 200 E. Main Street, Suite 905, Fort Wayne, IN 46802

    Michelle F. Kraus, Federal Community Defenders, Inc. 200 E. Main Street, Suite 905, Fort Wayne, IN 46802

(3)     If the party, amicus or intervener is a corporation:

    i)     Identify all its parent corporations, if any; and

        N/A

    ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

        N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: __s/ Chad J. Pennington__       Date: __August 10, 2023__

Attorney's Printed Name: __Chad J. Pennington__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [✓]    No [ ]

Address: __200 E. Main Street, Suite 905, Fort Wayne, IN 46802__

Phone Number: __(260) 422-9940__       Fax Number: __(260) 422-9954__

E-Mail Address: __chad_pennington@fd.org__

rev. 12/19 AK

# TABLE OF CONTENTS

**PAGE**

Circuit Rule 26.1 Disclosure Statement ...................................................... ii

Table of Contents ............................................................................................ iii

Table of Authorities ....................................................................................... iv

Issue Presented For Review ........................................................................... 1

Argument Response .......................................................................................... 1

    1.  Ms. Scheidt raises a legal challenge, therefore, the government's reference to what occurred after Ms. Scheidt acquired the firearms serves no legal purpose to the challenge raised. .................................... 5

    2.  *Holden* does not control Ms. Scheidt's appeal.. ....................................... 9

    3.  Section 922(a)(6) is not a mere commercial regulation of firearms. .... 10

    4.  The government's citations to Kapp, Dennis, Bryson, and Knox are unavailing.. ............................................................................................. 12

Conclusion ........................................................................................................ 15

Certificate of Compliance with F.R.A.P. Rule 32(a)(7)(C) ......................... 17

Certificate of Service ....................................................................................... 18

# TABLE OF AUTHORITIES

**CASES**                                                                                                **PAGE**

*Atkinson v. Garland*, 70 F.4th 1018, 1020, (7th Cir. 2023).......................................... 3

*Bryson v. United States*, 396 U.S. 64, 72 (1969) ...................................................... 12

*Dennis v. United States*, 384 U.S. 855, 866–67 (1966) .............................................. 12

*District of Columbia v. Heller*, 554 U.S. 570, 576, 581, 592 (2008) ......................... 1, 2

*Fraser v. ATF*, No. 3:22-CV-410, 2023 WL 3355339, at *7, *8 (E.D. Va. May 10, 2023)................................................................................................................. *Passim*

*N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 17, 23, 70, 71 (2022) ....... *Passim*

*Teixeira v. County of Alameda*, 873 F.3d 670, 687 (9th Cir. 2017) ........................... 11

*United States v. Cruikshank*, 92 U.S. 542, 553 (1876) ................................................ 2

*United States v. Hosford*, 843 F.3d 161, 166 (4th Cir. 2016) .................................... 11

*United States v. Holden*, 70 F.4th 1015, 1017, 1018 (7th Cir. 2023) ................ *Passim*

*United States v. Kapp*, 302 U.S. 214, 218 (1937)...................................................... 12

*United States v. Knox*, 396 U.S. 77, 79 (1969) ......................................................... 12

*United States v. Verdugo-Urquidez*, 494 U.S. 259, 262 (1990) ................................... 2

**STATUTES**

18 U.S.C. § 922(a)(1)(A) ............................................................................................ 10

18 U.S.C. § 922(a)(5) .................................................................................................. 10

18 U.S.C. § 922(a)(6) ........................................................................................... *Passim*

18 U.S.C. § 922(b)(1) .................................................................................................. 10

18 U.S.C. § 922(g)(3) ................................................................................................... 9

18 U.S.C. § 922(n) ...................................................................................................... 10

18 U.S.C. § 1001(a) ..................................................................................................... 12

28 U.S.C. § 1331 ......................................................................................................... 14

**OTHER AUTHORITIES**

27 C.F.R. § 478.96(b).................................................................................................. 10

27 C.F.R. § 478.99(b)(1) ............................................................................................. 10

27 C.F.R. § 478.102 .................................................................................................... 10

27 C.F.R. § 478.124(c)(1)-(5), (f) ............................................................................... 10

Federal Rule of Criminal Procedure 12 ..................................................................... 14

U.S. Const. amend. II ........................................................................................... *Passim*

# I.    ISSUE PRESENTED FOR REVIEW

Whether the Second Amendment's plain text covers § 922(a)(6)'s regulated conduct at *Bruen's* first prong?[1] The District Court erred in concluding that § 922(a)(6) is not covered by the Second Amendment's plain text.

# II.    ARGUMENT RESPONSE

"The Second Amendment provides: 'A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.'" *District of Columbia v. Heller*, 554 U.S. 570, 576 (2008) (quoting U.S. Const. amend. II)). At the time of the Founding, 1791, "[t]he Second Amendment guaranteed to all Americans the right to bear commonly used arms in public subject to certain reasonable, well-defined restrictions." *N.Y. State Rifle and Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 71 (2022). "Those restrictions, for example, limited the intent for which one could carry arms, the manner

---

[1] "R." refers to the District Court docket entries. "DE" refers to the docket entries before this Court. "App." refers to the short appendix attached in support of Ms. Scheidt's opening brief. "PSR" refers to the Presentence Investigation Report.

by which one carried arms, or the exceptional circumstances under which one could not carry arms, such as before justices of the peace and other government officials." *Id.*

The Second Amendment right to keep and bear arms codifies a pre-existing right. *See Heller*, 554 U.S. at 592; *see also United States v. Cruikshank*, 92 U.S. 542, 553 (1876). Thus, a reviewing court starts a Second Amendment challenge with the presumption that the Amendment confers an individual right on the firearm challenger. *See Heller*, 554 U.S. at 581. The Amendment applies to all members of "the political community, not an unspecified subset." *Id.* at 580 (citing *United States v. Verdugo-Urquidez*, 494 U.S. 259, 262 (1990)).

"[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition" regarding firearm regulation. *Id.* at 17.

"*Bruen* leaves no room for doubt: text and history, not a means-end analysis, now define the controlling Second Amendment inquiry."

*Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023). "Accordingly, when the Second Amendment's 'plain text' covers the regulated conduct, the government has only one way to defend the regulation—by proving that it is consistent with this Nation's historical tradition of firearm regulation." *Id.* (internal citation omitted).

Ms. Scheidt, as a member of the political community (there is no dispute she is not), had a Second Amendment protected interest in keeping and bearing an arm before she attempted to acquire firearms. And, her Second Amendment interest had vested before a firearm purveyor asked her to complete ATF Form 4473. When she attempted to acquire firearms, that right followed.

Ms. Scheidt's direct appeal here is focused on whether the demand that she provide information before she could acquire a firearm was itself a restriction on firearm possession. If it was, then the manner in which the government may defend the regulation is by affirmatively proving the regulation is consistent with the nation's history and tradition of firearm regulation. *See id.* If Congress and by extension, the Secretary of Treasury, were regulating, at least in part, Ms. Scheidt's vested right to possess a firearm, then Ms. Scheidt's challenge should

have proceeded to *Bruen's* second prong. The District Court erred here in not finding the regulation at issue was subject to Second Amendment review.

To illustrate, consider a hypothetical. If Ms. Scheidt, or any person, enters a firearm dealer's storefront and declines to complete ATF Form 4473 either because they do not feel comfortable doing so, they realized they would not be eligible based on the stated criteria on the Form, or do not want to otherwise complete the Form, the person then would not obtain the requested firearm. Under that scenario, the Form itself imposed a barrier on the right to acquire – to possess – a firearm. Had Ms. Scheidt not completed the Form because she was concerned about providing the answers, the Form itself and the information it sought would have the consequence of restricting her right to possess a firearm. At the core, the heart of the regulation remains who may possess a firearm.

The restriction here, and consequently, the Second Amendment infringement, is that before a person may obtain a firearm from a licensed firearm dealer, they are required to get through the Form. They are not permitted to acquire – to possess – a firearm without first

clearing that threshold hurdle. That hurdle restricts firearm possession, and brings the regulation at issue within the Second Amendment's ambit. Whether the regulation is Second Amendment consonant, is a matter of history and tradition. The District Court erred in not conducing that historical analysis.

### 1. **Ms. Scheidt raises a legal challenge, therefore, the government's reference to what occurred after Ms. Scheidt acquired the firearms serves no legal purpose to the challenge raised.**

Ms. Scheidt plead guilty to five counts under § 922(a)(6). R. 1; App. pp. 2-7. Ms. Scheidt has not contested the facts of her conviction (or the other statute she was convicted under). She made false statements on Form 4473 and has received a sanction. R. 76-1; App. pp. 8-15. The question on direct appeal is purely legal – whether the District Court erred at *Bruen's* first prong.

What Ms. Scheidt's appeal is not is a redo or rehash of the sentencing phase. Ms. Scheidt acknowledges she made a poor decision, has been punished for it, and received a sentence. She is now doing well and working in a residential reentry center in Wisconsin.

Ms. Scheidt had no scorable criminal history before this conviction, *see* PSR ¶¶ 50-53, and she is determined to put this aberrant

conviction behind her and is looking forward to a productive life. Ms. Scheidt's conviction and her personal history is no less complicated than most persons who enter the federal criminal justice system. Her history includes both the recent bad choices leading to her conviction and periods of her own intense trauma. *See id.* ¶ 60. Her poor decision, leading to her conviction, was likely influenced by many factors evident in her personal history.

However, what happened after Ms. Scheidt acquired the firearms at issue – the fact that there was a decedent and shootings -- does not help this Court resolve the question presented any more than consideration of Ms. Scheidt's personal history. Neither are proper. In fact, the government's citations to the non-disputed portions of the factual record achieve the exact opposite purpose – they distort the purely narrow legal question and suggest this Court should consider the broader facts that do not directly implicate Ms. Scheidt.

And, the firearm used to kill the decedent *was not purchased* by Ms. Scheidt. PSR ¶ 7. Specifically, the AK styled rifle used for the homicide was not connected to Ms. Scheidt's purchases; what was connected to her purchases was a separate 9mm hand gun found on the

assailant. *See id.* And, Ms. Scheidt did not provide any firearms to the assailant in that tragic shooting, rather, she provided them to a sperate individual, J.C., who then ostensibly transferred them to the assailant. *See id.* ¶ 14. J.C. was *not a* prohibited person at the time of the transfer, and he was legally permitted to possess the firearms. *See id.* It bears repeating, but Ms. Scheidt did not transfer the firearms to a prohibited person or to the person who committed the fatal shooting, or any shooting noticed in the PSR. *See id.* ¶¶ 8-14. And, the decedent's death was not related to the firearms acquired by Ms. Scheidt.

There is no doubt, the use of firearms is a legitimate social concern and likely an appropriate government regulatory interest. But those considerations, such as the social utility of a firearm regulation or the enforcement efforts related to any regulations, are not part of the *Bruen* Second Amendment calculus. There is no means-end balancing in the Second Amendment. *See Bruen*, 597 U.S. at 71. And, by citing to the fact that there was tragically a fatal shooting, using a firearm unrelated to Ms. Scheidt's purchases, the government here is inviting this Court to base its decision on the government's stated interest in firearm regulation or irrelevant factual material.

No matter how high or great the government's interest in regulating firearms may be versus whatever burden imposed on the Second Amendment right, *Bruen* expressly directs a reviewing court to not balance the government's enforcement interest against the individual right. 597 U.S. at 23 (quotations omitted) (noting the "Second Amendment does not permit—let alone require—judges to assess the costs and benefits of firearms restrictions . . ."). The government's resort to the negative and adverse societal costs to firearm possession that may be specifically evident in this case and the general concern regarding the ubiquity of firearms is redolent of the very modality of Second Amendment review the Supreme Court in *Bruen* stated must end.

The government argues that its "ability to ask questions is important as it can permit the government to run a background check and detect that an applicant is disqualified from possessing a firearm . . ." DE 19, p. 7. It may be important; but that importance is not relevant in the *Bruen* context. The argument also reinforces Ms. Scheidt's averment here – that the Form 4473 information gathering process is an important government interest *because* it is part of its efforts to

detect disqualified firearm *possessors*. Because the regulation at issue is targeted at preventing firearm possession, the restriction is subject to the Second Amendment's plain text.

### 2. *Holden* does not control Ms. Scheidt's appeal.

Ms. Scheidt's appeal is not on "all fours" and foreclosed, as the government argues, *see* DE 19, pp. 6-7, by *United States v. Holden*, 70 F.4th 1015, 1017 (7th Cir. 2023) In *Holden,* the appellant-defendant argued that indictment status was immaterial under the challenged statute because a restriction on firearm possession based on indictment status was itself an unconstitutional restriction. *See id.* What would bring Ms. Scheidt's appeal closer to *Holden*, is if she argued here that there is a constitutional defect with, for example, 18 U.S.C. § 922(g)(3) (prohibiting firearm possession based on control substance use or addiction), and that rendered her response immaterial. But she is not. The appellant-defendant in *Holden*, did "not contend, and the district court did not find, that there [was] any constitutional problem with § 922(a)(6)." *Id.* Ms. Scheidt, by contrast, *does* contend that there is a constitutional problem with § 922(a)(6) and its application in her case.

Furthermore, Ms. Scheidt is not asking this Court to overturn or overrule *Holden*. *Holden* remains good law for what it decided. But, the case is distinguishable. The holding in *Holden* was: A "truthful answer to the question 'are you under indictment?' can be material to the propriety of a firearms sale, whether or not all possible applications of § 922(n) comport with the Second Amendment." *Id.* at 1018. The barrier to possession in Ms. Scheidt's case occurred before she provided answers on Form 4473, through the requirement that she must complete the Form in order to possess a firearm. That is not an argument considered in *Holden*.

### 3. **Section 922(a)(6) is not a mere commercial regulation of firearms.**

The Second Amendment standard definition of "infringe . . . supports the conclusion that the pre-existing right includes a right to" acquire a firearm. *Fraser v. ATF*, No. 3:22-CV-410, 2023 WL 3355339, at *7 (E.D. Va. May 10, 2023) (finding 18 U.S.C. §§ 922(a)(1)(A), 922(a)(5), 922(b)(1), and the concomitant regulations, 27 C.F.R. §§ 478.96(b), 478.99(b)(1), 478.102, 478.124(c)(1)-(5), (f), unconstitutional under the *Bruen* framework."). "Infringe is defined in modern dictionaries as to encroach upon in a way that violates law or the rights

10

of another." *Id.* "Not simply protecting the heartland of the [primary] right [self-defense], the Second Amendment protects the environs surrounding it to prevent any encroachment on the core protections. Thus, by virtue of the word infringed, the Second Amendment's protective textual embrace" includes all conduct "necessary to exercise the right ('to keep and bear') and that . . . includes the right to" acquire firearm "so that one can keep and bear them." *Id.* The right to obtain a firearm, is a necessary "corollary to the right to keep a firearm." *Id.* at *8 (citing *United States v. Hosford*, 843 F.3d 161, 166 (4th Cir. 2016)).

Had § 922(a)(6) and Form 4473 only affected the firearm purveyors in this case or restricted the purveyors's ability to enter the commercial firearms marketplace, that would have rendered the challenged regulation a mere commercial regulation. *See Teixeira v. County of Alameda*, 873 F.3d 670, 687 (9th Cir. 2017) ("restrictions on a commercial actor's ability to enter the firearms market may . . . have little or no impact on the ability of individuals to exercise their Second Amendment right to keep and bear arms."). However, the regulation at issue here targets the possession of firearms by those potential possessors seeking to obtain a firearm from a licensed purveyor. That

regulatory effort does implicate the ability of an individual to exercise their Second Amendment right. *Fraser*, 2023 WL 3355339, at *7. Whether the regulation at issue violates the Second Amendment will require an analysis of the history and tradition of firearm regulation. But, the regulation at minimum does affect a possessory right.

**4.  The government's citations to *Kapp*, *Dennis*, *Bryson*, and *Knox* are unavailing.**

The government cites to several cases analyzing acts of dishonesty prosecuted under 18 U.S.C. § 1001(a). Ms. Scheidt was convicted under that statute and has not raised a Second Amendment challenge to that count of conviction. *See* PSR ¶ 1. Section 922(a)(6), rather, regulates, textually, the act of the acquisition or attempted acquisition of a firearm. *Kapp*, *Dennis*, *Bryson*, and *Knox* do not address a Second Amendment right that has already vested before the information had been sought.[2]

In addition, the government misconstrues Ms. Scheidt's argument. True, Ms. Scheidt was free to decline to answer the questions presented

---

[2] *United States v. Kapp*, 302 U.S. 214, 218 (1937), *Dennis v. United States*, 384 U.S. 855, 866-67 (1966), *United States v. Knox*, 396 U.S. 77, 79 (1969), and *Bryson v. United States*, 396 U.S. 64, 72 (1969). *See* DE 19, pp. 7-8.

in Form 4473, but had she refused, she would not have been able to

acquire the firearm. Ms. Scheidt had a vested interest in obtaining the

firearm, declining to answer here would have resulted in the loss or at

least the diminution of her Second Amendment right to possess a

firearm. *See Fraser*, 2023 WL 3355339, at *7.

To that point, the government reworks the *Bruen*, standard to

serve its argument. *Bruen* "was [*not*] designed to subject the Second

Amendment to the *same* 'body of rules' as other Bill of Rights

guarantees." DE 19, p. 10 (internal citations omitted) (emphasis added).

The quote in *Bruen*, the government only half cites, is that the Second

Amendment is not to be treated as "second-class right, subject to an

entirely *different* body of rules than the other Bill of Rights guarantees."

597 U.S. at 70 (emphasis added). The Supreme Court has established

the test for Second Amendment review in *Bruen*. That test is one of

constitutional text and history. The Supreme Court did not hold that

the Second Amendment test a reviewing court need apply be identical to

other Bill of Rights protections – sameness, as the government

contends, is not the issue or requirement.

What the Supreme Court mandated is that a reviewing court not apply the Second Amendment differently, and that is exactly what the government is attempting to accomplish here: That Ms. Scheidt was required or somehow limited to seek relief through a civil enforcement suit under 28 U.S.C. § 1331. That is not required in, for example, the Fourth Amendment context – a criminal defendant is not required to seek a declaratory judgment before they transport potential contraband or file a request for a civil remedy. They may be arrested and move to suppress through Federal Rule of Criminal Procedure 12. Thus, a criminal and civil remedy exists in the Fourth Amendment context. The same applies to the Fifth Amendment or Sixth Amendment, civil pre-enforcement is not a requirement. To find a Second Amendment challenger may only raise a cognizable claim through a civil action would be to treat it differently.

Certainly, Ms. Scheidt would agree, she should have sought relief in a declaratory-judgment action first, that would have undeniably been the more prudent course of action. But, the Supreme Court has not found that the Second Amendment is available *only* as a civil remedy. The operative test under the *Bruen* Second Amendment standard

relates to the power of Congress to regulate firearm possession and the government's burden to show the regulation challenged is sufficiently historically rooted from the time of the Founding. *Bruen*, 597 U.S. at 70. There is nothing from that test suggesting a circumscribed Second Amendment remedy applying only to civil settings. That the test applies whenever the government attempts to regulate firearm possession militates against limiting relief to a civil proceeding.

What Ms. Scheidt should have done to challenge the regulation at issue, is distinct from what she was required to do or permitted to do. Again, to find that the Second Amendment confers only relief in a civil proceeding renders the right it vests with less protection – i.e, the very different body of rules the Supreme Court has cautioned against.

## III. CONCLUSION

Ms. Scheidt respectfully requests that this Court reverse the District Court's denial of her motion to dismiss counts 1-5 of the indictment and remand for consideration of *Bruen's* second prong.

Date:  <u>February 14, 2024</u>.

                                     Respectfully submitted,

                                     Northern District of Indiana
                                     Federal Community Defenders, Inc.

                                     By:    <u>s/Chad J. Pennington</u>
                                                  200 E. Main Street, Suite 905
                                                  Fort Wayne, IN  46802
                                                  Phone: (260) 422-9940
                                                  Fax: (260) 422-9954
                                                  E-mail: Chad_Pennington@fd.org

16

**CERTIFICATE OF COMPLIANCE WITH FRAP RULE 32(a)(7)(C)**

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(C) and Circuit Rule 32 in that it contains 3143 words as shown by Microsoft Word for Microsoft 365 used in preparing this brief.

Date: <u>February 14, 2024</u>

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Defendant-Appellant Echo Scheidt

## CERTIFICATE OF SERVICE

I hereby certify that on <u>February 14, 2024</u>, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

<u>s /Chad J. Pennington</u>
Chad J. Pennington, Attorney for
Defendant-Appellant Echo Scheidt
